HILL, P.J.
*175 INTRODUCTION
Brittany Navarra (defendant) stands convicted, following a jury trial, of first degree murder ( Pen. Code, § 187, subd. (a) ; count 1), first degree burglary (id ., § 459; count 2), and conspiracy to commit murder (id ., § 182, subd. (a)(1); count 3). The jury further found true a lying-in-wait special circumstance (id ., § 190.2, subd. (a)(15)) with respect to count 1. Defendant was sentenced to life in prison without the possibility of parole (LWOP) and ordered to pay various fees, fines, and assessments.[1]
In our original unpublished opinion, we found no prejudicial error and affirmed, rejecting defendant's claims (1) she was denied various constitutional rights by the admission of Gran's convictions; (2) she was denied various constitutional rights by the admission of Gran's statement to a psychologist who interviewed Gran in conjunction with Gran's plea of not *176 guilty by reason of insanity (NGI); (3) the jury instructions allowed jurors to find defendant guilty of first degree murder based on Gran's mental state rather than her own; (4) there was insufficient evidence to support first degree murder by lying in wait and the lying-in-wait special circumstance; (5) imposition of an LWOP sentence violated the Eighth Amendment to the United States Constitution.
Defendant petitioned for rehearing, arguing, among other things, that Proposition 57, the Public Safety and Rehabilitation Act of 2016 (Proposition 57 or the Act), requires that she be afforded a conditional reversal of the judgment and remand for a fitness/transfer hearing in juvenile court.[2] Although it would have been preferable for appellate counsel to seek permission to file a supplemental brief before defendant's appeal was ordered on calendar, rather than waiting until our opinion was filed, we granted rehearing to determine whether defendant is entitled to relief under Proposition 57. In the published portion of this opinion, we conclude Proposition 57 does not apply retroactively to defendant's case. In so holding, we reject defendant's claim retroactivity to juvenile offenders with LWOP sentences is required under Montgomery v. Louisiana (2016) 577 U.S. ----, ----, 136 S.Ct. 718, 734, 193 L.Ed.2d 599 ( Montgomery ). In the unpublished portion, we adhere to our original analysis and again find no prejudicial error. Accordingly, we again affirm.
FACTS **
DISCUSSION
*823 I-V***
VI
PROPOSITION 57
In granting rehearing, we asked the parties to submit supplemental briefing regarding whether Proposition 57 applies retroactively to defendant's case.
*177 Defendant argues she is entitled to relief under the Act because (1) the provisions of Proposition 57 requiring a juvenile transfer hearing are retroactive to cases not yet final, pursuant to the holding of In re Estrada (1965) 63 Cal.2d 740, 48 Cal.Rptr. 172, 408 P.2d 948 ( Estrada ), and (2) retroactivity to juvenile offenders with LWOP sentences is required under Montgomery , supra , 577 U.S. ----, 136 S.Ct. 718.
A. Procedural Background and Proposition 57
Historically, before a minor could be tried in criminal (adult) court, California required a finding the minor was unfit to be dealt with under the juvenile court law. (See, e.g., Juan G. v. Superior Court (2012) 209 Cal.App.4th 1480, 1493, 147 Cal.Rptr.3d 816 ( Juan G. ); People v. Cardona (2009) 177 Cal.App.4th 516, 524, 99 Cal.Rptr.3d 313.) Although, prior to 1999, there were no provisions for the direct filing (mandatory or discretionary) of charges against juveniles in criminal court ( Juan G. , at p. 1493, 147 Cal.Rptr.3d 816 ), a presumption of unfitness for minors, aged 16 years old or older and charged with specified offenses, was added to the Welfare and Institutions Code[48] in 1979, and extended, in 1994, to minors between the ages of 14 and 16 who were alleged to have committed certain forms of murder ( People v. Superior Court (Jones) (1998) 18 Cal.4th 667, 680-681, fn. 1, 76 Cal.Rptr.2d 641, 958 P.2d 393 ).
In 1999, the Legislature added subdivision (b) to section 602, mandating the direct filing of criminal cases against minors 16 years of age or older under specified circumstances. ( Juan G. , supra , 209 Cal.App.4th at p. 1493, 147 Cal.Rptr.3d 816.) In 2000, voters approved Proposition 21, the Gang Violence and Juvenile Crime Prevention Act of 1998. In pertinent part, it "confer[red] on prosecutors the discretion to bring specified charges against certain minors directly in criminal court, without a prior adjudication by the juvenile court that the minor is unfit for a disposition under the juvenile court law." ( Manduley v. Superior Court (2002) 27 Cal.4th 537, 545, 117 Cal.Rptr.2d 168, 41 P.3d 3 ( Manduley ); see generally id . at pp. 548-550, 117 Cal.Rptr.2d 168, 41 P.3d 3.) Proposition 21 also decreased, to 14, the minimum age for mandatory criminal prosecutions. ( Manduley , at p. 550, 117 Cal.Rptr.2d 168, 41 P.3d 3.)
Krista Pike was killed on January 14, 2008. Defendant was born June 26, 1991, making her 16 years old at the time of the crimes of which she was convicted. Because the information alleged that Pike's murder was committed by Dustin Gran, with defendant aiding and abetting him, defendant was not subject to the mandatory direct filing provision of former section 602, *178 subdivision (b). She was, however, subject to the discretionary direct filing provisions of former section 707.
Defendant was convicted on September 24, 2014, and sentenced on February 20, 2015. Her notice of appeal was filed on February 20, 2015. On November 8, 2016, while defendant's appeal was pending, voters enacted Proposition 57. It went into *824 effect the next day. ( Cal. Const., art. II, § 10, subd. (a).) Insofar as we are concerned, the Act eliminated the People's ability to initiate criminal cases against juvenile offenders anywhere but in juvenile court. The Act also removed the presumption of unfitness that previously attached to the alleged commission of certain offenses.[49]
The purpose of the portions of Proposition 57 that deal with juvenile offenders is to undo Proposition 21. (See generally People v. Marquez (2017) 11 Cal.App.5th 816, 821, review granted July 26, 2017, S242660 ( Marquez ).) Thus, two of the Act's stated purposes, contained in uncodified section 2 thereof, are to "[s]top the revolving door of crime by emphasizing rehabilitation, especially for juveniles," and "[r]equire a judge, not a prosecutor, to decide whether juveniles should be tried in adult court." (Voter Information Guide, Gen. Elec. (Nov. 8, 2016) text of Prop. 57, § 2, p. 141.)[50]
B. Analysis
There can be no doubt that, had defendant committed her offenses after Proposition 57 went into effect, she would have been entitled to a fitness hearing-with no presumption of unfitness-before her case could be transferred to criminal (adult) court for prosecution.[51] The question we confront is *179 whether Proposition 57 applies to juvenile offenders who, like defendant, were charged, tried, convicted, and sentenced before the Act's effective date, but whose cases are not yet final on appeal. (See People v. Covarrubias (2016) 1 Cal.5th 838, 929, 207 Cal.Rptr.3d 228, 378 P.3d 615 [for purpose of determining retroactive application of amendment to criminal statute, judgment is not final until time for petitioning for writ of certiorari in United States Supreme Court has passed].) This is a purely legal question we analyze de novo. (See People v. Arroyo (2016) 62 Cal.4th 589, 593, 197 Cal.Rptr.3d 122, 364 P.3d 168 ( Arroyo ).)[52] *825 Defendant says the provisions of Proposition 57 requiring a juvenile fitness/transfer hearing, and repealing the presumption of unfitness, apply to all cases not yet final. We disagree.
In ascertaining whether a statute should be applied retroactively, the intent of the electorate, or the Legislature, "is the 'paramount' consideration." ( People v. Nasalga (1996) 12 Cal.4th 784, 792, 50 Cal.Rptr.2d 88, 910 P.2d 1380 (plur. opn. of Werdegar, J.); see People v. Conley (2016) 63 Cal.4th 646, 656, 203 Cal.Rptr.3d 622, 373 P.3d 435.) " ' "In interpreting a voter initiative" ' such as Proposition [57], ' "we apply the same principles that govern statutory construction. [Citation.] Thus, [1] 'we turn first to the language of the statute, giving the words their ordinary meaning.' [Citation.] [2] The statutory language must also be construed in the context of the statute as a whole and the overall statutory scheme [in light of the electorate's intent]. [Citation.] [3] When the language is ambiguous, 'we refer to other indicia of the voters' intent, particularly the analyses and arguments contained in the official ballot pamphlet.' " ' [Citation.] 'In other words, our "task is simply to interpret and apply the initiative's language so as to effectuate the electorate's intent." ' [Citation.]" ( Arroyo , supra , 62 Cal.4th at p. 593, 197 Cal.Rptr.3d 122, 364 P.3d 168.)
"It is well settled that a new statute is presumed to operate prospectively absent an express declaration of retrospectivity or a clear indication that the electorate, or the Legislature, intended otherwise. [Citations.]" ( Tapia , supra , 53 Cal.3d at p. 287, 279 Cal.Rptr. 592, 807 P.2d 434.) While the Welfare and Institutions Code does not contain a statutory codification of this principle (cf., e.g., Code Civ. Proc., § 3, Pen. Code, § 3 ), the California Supreme Court has made clear such *180 statutory language " 'does no more than codify a general rule of construction, applicable as well to statutes containing no such provision. [Citations.]' [Citation.]" ( Stenger v. Anderson (1967) 66 Cal.2d 970, 977, fn. 13, 59 Cal.Rptr. 844, 429 P.2d 164.)
The provisions of Proposition 57 affecting only juvenile offenders contain no express statement regarding retroactivity. Defendant seeks support for her claim of retroactive application in the fact the Act contains no savings clause; the specified purposes of the Act, quoted ante ; uncodified section 5 of the Act, which says the Act "shall be broadly construed to accomplish its purposes" (Voter Information Guide, Gen. Elec., supra , text of Prop. 57, § 5, p. 145); and uncodified section 9 of the Act, which says the Act "shall be liberally construed to effectuate its purposes" (Voter Information Guide, Gen. Elec., supra , text of Prop. 57, § 9, p. 146). Our Supreme Court, however, has "been cautious not to infer the voters' or the Legislature's intent on the subject of prospective versus retrospective operation from 'vague phrases' [citation] and 'broad, general language' [citation] in statutes, initiative measures and ballot pamphlets." ( Californians For Disability Rights v. Mervyn's, LLC (2006) 39 Cal.4th 223, 229-230, 46 Cal.Rptr.3d 57, 138 P.3d 207.) "Accordingly, we will not attempt to infer from the ambiguous general language of Proposition [57] whether the voters intended the measure to apply to ... cases [that are not yet final]. Instead we will employ the ordinary presumptions and rules of statutory construction commonly used to decide such matters when a statute is silent." ( Id . at p. 230, 46 Cal.Rptr.3d 57, 138 P.3d 207.)
" '[A] statute that is ambiguous with respect to retroactive application is construed ... to be unambiguously prospective. [Citations.]' " ( *826 Myers v. Philip Morris Companies, Inc. (2002) 28 Cal.4th 828, 841, 123 Cal.Rptr.2d 40, 50 P.3d 751, quoting, inter alia, I.N.S. v. St. Cyr (2001) 533 U.S. 289, 320-321, fn. 45, 121 S.Ct. 2271, 150 L.Ed.2d 347.) Defendant argues, however, that Proposition 57 falls within the exception to this general principle carved out by Estrada , supra , 63 Cal.2d 740, 48 Cal.Rptr. 172, 408 P.2d 948.
Estrada dealt with a situation in which, at the time of the petitioner's offense (escape without force or violence), the applicable statutes mandated a sentence of at least one year's imprisonment, to commence from the time the prisoner would have been discharged otherwise, with no grant of parole until service of at least two calendar years from the date of the escapee's return to prison after conviction. After the petitioner committed the crime, but before his conviction and sentence, the statutes were amended to provide for a *181 sentence of six months to five years in prison, with no minimum date for parole eligibility. ( Estrada , supra , 63 Cal.2d at pp. 743-744, 48 Cal.Rptr. 172, 408 P.2d 948.)[53] The California Supreme Court stated:
"The problem, of course, is one of trying to ascertain the legislative intent-did the Legislature intend the old or new statute to apply? Had the Legislature expressly stated which statute should apply, its determination, either way, would have been legal and constitutional. It has not done so. We must, therefore, attempt to determine the legislative intent from other factors.
"There is one consideration of paramount importance. It leads inevitably to the conclusion that the Legislature must have intended, and by necessary implication, provided, that the amendatory statute should prevail. When the Legislature amends a statute so as to lessen the punishment it has obviously expressly determined that its former penalty was too severe and that a lighter punishment is proper as punishment for the commission of the prohibited act. It is an inevitable inference that the Legislature must have intended that the new statute imposing the new lighter penalty now deemed to be sufficient should apply to every case to which it constitutionally could apply. The amendatory act imposing the lighter punishment can be applied constitutionally to acts committed before its passage provided the judgment convicting the defendant of the act is not final. This intent seems obvious, because to hold otherwise would be to conclude that the Legislature was motivated by a desire for vengeance, a conclusion not permitted in view of modern theories of penology." ( Estrada , supra , 63 Cal.2d at pp. 744-745, 48 Cal.Rptr. 172, 408 P.2d 948.)
With respect to Penal Code section 3, the court stated: "That section simply embodies the general rule of construction, coming to us from the common law, that when there is nothing to indicate a contrary intent in a statute it will be presumed that the Legislature intended the statute to operate prospectively and not retroactively. That rule of construction, however, is not a straitjacket. Where the Legislature has not set forth in so many words what it intended, the rule of construction should not be followed blindly in complete disregard of factors that may give a clue to the legislative intent. It is to be applied only after, considering all pertinent factors, it is determined that it is *827 impossible to ascertain the legislative intent. In the instant case there are ... other factors that indicate the Legislature must have intended that the amendatory statute should operate in all cases not reduced to final judgment at the time of its passage." ( Estrada , supra , 63 Cal.2d at p. 746, 48 Cal.Rptr. 172, 408 P.2d 948.) *182 We conclude Estrada does not require that the provisions of Proposition 57 be applied retroactively to defendant's case. Although Estrada has been broadly applied in the past (see, e.g., People v. Francis (1969) 71 Cal.2d 66, 75-76, 75 Cal.Rptr. 199, 450 P.2d 591 [applying Estrada to statutory amendment vesting in trial court discretion to impose either same penalty as under former law or lesser penalty] ), the California Supreme Court has since made it clear Estrada "supports an important, contextually specific qualification to the ordinary presumption that statutes operate prospectively: When the Legislature has amended a statute to reduce the punishment for a particular criminal offense , we will assume, absent evidence to the contrary, that the Legislature intended the amended statute to apply to all defendants whose judgments are not yet final on the statute's operative date. [Citation.]" ( People v. Brown (2012) 54 Cal.4th 314, 323, 142 Cal.Rptr.3d 824, 278 P.3d 1182, italics added, fn. omitted ( Brown ).)
The state high court noted the "limited role Estrada properly plays in our jurisprudence of prospective versus retrospective operation" ( Brown , supra , 54 Cal.4th at p. 324, 142 Cal.Rptr.3d 824, 278 P.3d 1182 ), and found Estrada 's statement about the rule of construction codified in Penal Code section 3 not being a "straitjacket" ( Estrada , supra , 63 Cal.2d at p. 746, 48 Cal.Rptr. 172, 408 P.2d 948 ), if applied broadly and literally, would "endanger the default rule of prospective operation" ( Brown , at p. 324, 142 Cal.Rptr.3d 824, 278 P.3d 1182 ). The court concluded: " Estrada is today properly understood, not as weakening or modifying the default rule of prospective operation codified in [Penal Code] section 3, but rather as informing the rule's application in a specific context by articulating the reasonable presumption that a legislative act mitigating the punishment for a particular criminal offense is intended to apply to all nonfinal judgments. [Citation.]" ( Ibid ., italics added.) The court rejected the argument Estrada should be understood to apply to any statute that reduced punishment in any manner, noting "the rule and logic of Estrada is specifically directed to a statute that represents ' "a legislative mitigation of the penalty for a particular crime " ' [citation]." ( Brown , at p. 325, 142 Cal.Rptr.3d 824, 278 P.3d 1182, original italics.)
Brown concerned the application of a change in the rate at which prisoners in local custody could earn conduct credits ( Brown , supra , 54 Cal.4th at pp. 317-318, 142 Cal.Rptr.3d 824, 278 P.3d 1182 ), a very different situation than we confront here. Nevertheless, we cannot just blithely write off, on that ground, a pronouncement by our state's highest court that limits the holding in one of that court's prior cases. That the state Supreme Court did not intend this limitation to apply only in the circumstances presented in Brown is clearly demonstrated by the fact it cited to a discussion of the default rule of prospective application, and rejection of a broad interpretation of Estrada , contained in Evangelatos v. Superior Court (1988) 44 Cal.3d 1188, 1207-1209, 246 Cal.Rptr. 629, 753 P.2d 585, a civil case. ( Brown , at pp. 324-325, 142 Cal.Rptr.3d 824, 278 P.3d 1182.) The Supreme Court's application of the limitation on Estrada in two such disparate scenarios *183 strongly signals its intent that said limitation should be broadly applied. This is especially so when we take into account that court's more recent reference *828 to Brown as "acknowledging the continuing viability of the Estrada rule, [but] emphasiz[ing] its narrowness." ( People v. Hajek and Vo (2014) 58 Cal.4th 1144, 1196, 171 Cal.Rptr.3d 234, 324 P.3d 88, disapproved on another ground in People v. Rangel (2016) 62 Cal.4th 1192, 1216, 200 Cal.Rptr.3d 265, 367 P.3d 649.)
We recognize significant differences exist between juvenile and adult offender laws, and that "[t]he former seeks to rehabilitate, while the latter seeks to punish." ( In re Julian R. (2009) 47 Cal.4th 487, 496, 97 Cal.Rptr.3d 790, 213 P.3d 125.) We also recognize "the certification of a juvenile offender to an adult court has been ... characterized as 'the worst punishment the juvenile system is empowered to inflict.' [Citation.]" ( Ramona R. v. Superior Court (1985) 37 Cal.3d 802, 810, 210 Cal.Rptr. 204, 693 P.2d 789.) Proposition 57 has the potential to reduce the range of permissible punishment-including that applicable to the offenses of which defendant was convicted-for a class of offenders. Nevertheless, no provision of Proposition 57 mitigates the penalty for a particular criminal offense. Accordingly, Estrada does not overcome the strong presumption of prospective-only application.
As previously noted, the portions of Proposition 57 applicable only to juvenile offenders contain no express retroactivity provision. By contrast, the Act expressly renders the provisions relating to eligibility for parole consideration retroactive by making them applicable to "[a]ny person convicted ... and sentenced." ( Cal. Const., art. I, § 32, subd. (a)(1); see People v. Franklin (2016) 63 Cal.4th 261, 278, 202 Cal.Rptr.3d 496, 370 P.3d 1053 [discussing retroactivity of youth offender parole hearings under Pen. Code, § 3051 ].) Moreover, section 707, subdivision (a)(1), as amended by the Act, mandates that any motion to transfer the minor from juvenile court to criminal court "must be made prior to the attachment of jeopardy ." (Italics added.)
"The voters are presumed to have been aware of existing law at the time an initiative was enacted. [Citations.]" ( Juan G. , supra , 209 Cal.App.4th at p. 1494, 147 Cal.Rptr.3d 816.) In addition, we generally assume voters considered the entire text of a proposal submitted to them for enactment. (See People v. Valencia (2017) 3 Cal.5th 347, 369, 220 Cal.Rptr.3d 230, 397 P.3d 936.) This being the case, logic dictates that had voters intended the juvenile offender provisions of Proposition 57 to apply to such offenders who were already tried, convicted, and sentenced, the enactment would have included an express provision to that effect, as did the parole eligibility portions of the Act.
When interpreting a legislative enactment, " '[w]e must ... avoid a construction that would produce absurd consequences, which we presume the *184 Legislature [or voters] did not intend. [Citations.]' [Citation.]" ( In re Greg F. (2012) 55 Cal.4th 393, 406, 146 Cal.Rptr.3d 272, 283 P.3d 1160 ; see People v. Union Pacific Railroad Co. (2006) 141 Cal.App.4th 1228, 1257 & fn. 5, 47 Cal.Rptr.3d 92.) To hold Proposition 57 applies retroactively to defendants who have been convicted and sentenced, but whose judgments are not yet final, would mean an offender such as defendant, who was tried and convicted by a jury of special circumstance murder upon proof beyond a reasonable doubt, and sentenced to LWOP by a court that carefully considered whether to impose a lesser term of 25 years to life as permitted by Penal Code section 190.5, subdivision (b), would be given the opportunity of being released within a matter of a few years (see, e.g. §§ 607, 1769, 1771). This is so even though the LWOP sentence comported with the Eighth Amendment to the *829 United States Constitution, as construed in Miller, supra, 567 U.S. 460, 132 S.Ct. 2455 and Montgomery , supra , 577 U.S. ----, 136 S.Ct. 718. It is difficult to imagine a more absurd result, or that voters intended for such an offender to be returned to society within such a short time.
Nonetheless, defendant asserts retroactivity is required under Montgomery , supra , 577 U.S. ----, 136 S.Ct. 718. That case confronted the question "whether Miller 's prohibition on mandatory life without parole for juvenile offenders ... announce[d] a new substantive rule that, under the Constitution, must be retroactive." ( Id . at p. ----, 136 S.Ct. at p. 732.) The high court explained that a procedural rule (which generally is not retroactive) " 'regulate[s] only the manner of determining the defendant's culpability.' [Citation.] A substantive rule, in contrast, forbids 'criminal punishment of certain primary conduct' or prohibits 'a certain category of punishment for a class of defendants because of their status or offense.' [Citations.]" ( Ibid . ) In finding Miller announced a substantive rule required to be given retroactive effect, the court explained:
" Miller requires that before sentencing a juvenile to life without parole, the sentencing judge take into account 'how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison.' [Citation.] The Court recognized that a sentencer might encounter the rare juvenile offender who exhibits such irretrievable depravity that rehabilitation is impossible and life without parole is justified. But in light of 'children's diminished culpability and heightened capacity for change,' Miller made clear that 'appropriate occasions for sentencing juveniles to this harshest possible penalty will be uncommon.' [Citation.]
" Miller , then, did more than require a sentencer to consider a juvenile offender's youth before imposing life without parole; it established that the penological justifications for life without parole collapse in light of 'the *185 distinctive attributes of youth.' [Citation.] Even if a court considers a child's age before sentencing him or her to a lifetime in prison, that sentence still violates the Eighth Amendment for a child whose crime reflects ' "unfortunate yet transient immaturity." ' [Citations.] Because Miller determined that sentencing a child to life without parole is excessive for all but ' "the rare juvenile offender whose crime reflects irreparable corruption," ' [citations] it rendered life without parole an unconstitutional penalty for 'a class of defendants because of their status'-that is, juvenile offenders whose crimes reflect the transient immaturity of youth. [Citation.] As a result, Miller announced a substantive rule of constitutional law. Like other substantive rules, Miller is retroactive because it ' "necessarily carr[ies] a significant risk that a defendant" '-here, the vast majority of juvenile offenders-" 'faces a punishment that the law cannot impose upon him.' " [Citations.]" ( Montgomery , supra , 577 U.S. at pp. ---- - ----, 136 S.Ct. at pp. 733-734.)
Defendant reasons: "Proposition 57 helps to effectuate the substantive rule of constitutional law established by Miller , by creating a presumption that juvenile offenders be treated within the juvenile system with its focus on rehabilitation rather than punishment. The requirement of a juvenile transfer hearing which considers the juvenile's amenability to rehabilitation is necessary to effectuate the Miller mandate that juvenile LWOP be rare. Thus, under Montgomery , Proposition 57 requiring a juvenile transfer hearing must be retroactively applied to juvenile offenders *830 sentenced to LWOP. Because [defendant] was sentenced to LWOP, the Eighth Amendment requires that she be accorded a juvenile transfer hearing to enable evaluation of her amenability to rehabilitation."
In our view, neither Miller nor Montgomery suggests a juvenile offender is constitutionally entitled to an opportunity to be adjudicated in the juvenile court system. Our state Supreme Court has concluded there is no such constitutional right ( Manduley , supra , 27 Cal.4th at pp. 564-565, 117 Cal.Rptr.2d 168, 41 P.3d 3, 27 Cal.4th 887A at pp. 564-565 ), and nothing in the United States Supreme Court's more recent pronouncements causes us to doubt that conclusion.
Here, the trial court clearly had in mind that the overriding question at sentencing was whether, in light of all the Miller factors and those to be considered under Penal Code section 190.3 and the California Rules of Court, defendant was the rare juvenile offender whose crime reflected irreparable corruption resulting in permanent incorrigibility, rather than transient immaturity. Thus, the trial court fully evaluated defendant's amenability to rehabilitation, simply not in the context of a fitness/transfer hearing. The trial court expressly found defendant could not be rehabilitated and that LWOP was the appropriate sentence. Neither Miller nor Montgomery entitles defendant to anything more.
*186 DISPOSITION
The judgment is affirmed.
WE CONCUR:
POOCHIGIAN, J.
MEEHAN, J.

Defendant initially was jointly charged with Dustin Robert Gran; however, the parties stipulated to sever the cases for trial. Defendant and Gran were tried separately, with venue changed for both trials to Stanislaus County, where a new case number was assigned in accord with that county's case management system. Gran's case is not before us on this appeal.

Unless otherwise specified, references to this enactment are to those portions of the Act applicable only to juvenile offenders.

See footnote *, ante.

See footnote *, ante.

Further statutory references are to the Welfare and Institutions Code unless otherwise stated.

Section 602 now states: "Except as provided in Section 707, any person who is under 18 years of age when he or she violates any law of this state ..., is within the jurisdiction of the juvenile court, which may adjudge such person to be a ward of the court."
Section 707 now provides, in pertinent part: "(a)(1) In any case in which a minor is alleged to be a person described in Section 602 by reason of the violation, when he or she was 16 years of age or older, of any felony criminal statute, ... the district attorney ... may make a motion to transfer the minor from juvenile court to a court of criminal jurisdiction. The motion must be made prior to the attachment of jeopardy. Upon such motion, the juvenile court shall order the probation officer to submit a report on the behavioral patterns and social history of the minor.... [¶] (2) Following submission and consideration of the report, and of any other relevant evidence that the petitioner or the minor may wish to submit, the juvenile court shall decide whether the minor should be transferred to a court of criminal jurisdiction. In making its decision, the court shall consider [certain specified] criteria."

The Voter Information Guide is available at < http://voterguide.sos.ca.gov/en/propositions/57/> [as of Oct. 6, 2017].

We are not here faced with, and express no opinion concerning, the situation of a minor who was charged in adult court but not yet tried at the time the Act went into effect. (See People v. Superior Court (Lara) (2017) 9 Cal.App.5th 753, 758, 773-778, review granted May 17, 2017, S241231; see also Tapia v. Superior Court (1991) 53 Cal.3d 282, 288, 279 Cal.Rptr. 592, 807 P.2d 434 (Tapia ).)

This question is pending review before the state Supreme Court in numerous cases, including People v. Superior Court (Walker) (2017) 12 Cal.App.5th 687, review granted September 13, 2017, S243072; Marquez, supra, 11 Cal.App.5th 816, rev.gr.; People v. Vela (2017) 11 Cal.App.5th 68, review granted July 12, 2017, S242298; People v. Mendoza (2017) 10 Cal.App.5th 327, review granted July 12, 2017, S241647; and People v. Cervantes (2017) 9 Cal.App.5th 569, review granted May 17, 2017, S241323.

"Although parole constitutes a distinct phase from the underlying prison sentence, a period of parole following a prison term has generally been acknowledged as a form of punishment." (People v. Nuckles (2013) 56 Cal.4th 601, 609, 155 Cal.Rptr.3d 374, 298 P.3d 867.)