Filed 2/1/18

# IN THE SUPREME COURT OF CALIFORNIA

| | | |
|---|---|---|
| THE PEOPLE, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | S241231 |
| v. | ) | |
| | ) | Ct.App. 4/2 E067296 |
| THE SUPERIOR COURT OF RIVERSIDE | ) | |
| COUNTY, | ) | |
| | ) | Riverside County |
| Respondent; | ) | Super. Ct. No. RIF1601012 |
| | ) | |
| PABLO ULLISSES LARA, JR., | ) | |
| | ) | |
| Real Party in Interest. | ) | |
| _____ | ) | |

Real party in interest, Pablo Ullisses Lara, Jr. (hereafter, defendant), was charged in criminal (or adult) court with sex crimes allegedly committed in 2014 and 2015 when he was 14 and 15 years old.[1] The law then in effect permitted the prosecutor to charge the case directly in adult court. In November 2016, after the charges were filed, the electorate passed Proposition 57, the "Public Safety and Rehabilitation Act of 2016" (Proposition 57). Proposition 57 prohibits prosecutors from charging juveniles with crimes directly in adult court. Instead, they must commence the action in juvenile court. If the prosecution wishes to try the

---

[1] We will use the terms "adult court" and "criminal court" interchangeably to refer to the court system for adults and juveniles who are tried as adults, and to distinguish that system from the juvenile court system, where most juvenile matters are handled.

1

juvenile as an adult, the juvenile court must conduct what we will call a "transfer hearing" to determine whether the matter should remain in juvenile court or be transferred to adult court. Only if the juvenile court transfers the matter to adult court can the juvenile be tried and sentenced as an adult. (See Welf. & Inst. Code, § 707, subd. (a).)[2]

We must decide whether this part of Proposition 57 applies retroactively to benefit defendant. In *In re Estrada* (1965) 63 Cal.2d 740 (*Estrada*), we held that a statute that reduced the punishment for a crime applied retroactively to any case in which the judgment was not final before the statute took effect. In *People v. Francis* (1969) 71 Cal.2d 66 (*Francis*), we applied *Estrada* to a statute that merely made a reduced punishment possible. *Estrada* is not directly on point; Proposition 57 does not reduce the punishment for a crime. But its rationale does apply. The possibility of being treated as a juvenile in juvenile court—where rehabilitation is the goal—rather than being tried and sentenced as an adult can result in dramatically different and more lenient treatment. Therefore, Proposition 57 reduces the possible punishment for a class of persons, namely juveniles. For this reason, *Estrada*'s inference of retroactivity applies. As nothing in Proposition 57's text or ballot materials rebuts this inference, we conclude this part of Proposition 57 applies to all juveniles charged directly in adult court whose judgment was not final at the time it was enacted.

Because the Court of Appeal reached a similar result, although for different reasons, we affirm the judgment.

## I. PROCEDURAL HISTORY

On June 10, 2016, the Riverside County District Attorney filed an information in adult court charging defendant with kidnapping for rape, oral

---

[2] All further statutory citations are to the Welfare and Institutions Code unless otherwise indicated.

2

copulation, and sodomy; forcible oral copulation with a child under 14 years of age; and two counts of forcible sodomy. Defendant has not yet been tried, but the charges are based on sex crimes defendant allegedly committed against a girl who was seven and eight years old when the crimes occurred.

On November 8, 2016, the electorate passed Proposition 57, and it took effect the next day. (Cal. Const., art. II, § 10, subd. (a).) On November 16, 2016, defendant requested the matter be transferred to juvenile court for a "fitness hearing" pursuant to Proposition 57. After a hearing, on November 29, 2016, the trial court granted the motion, holding that Proposition 57 applies retroactively to this case. It issued a short stay to permit the People to seek writ review in the Court of Appeal.

Three days later, the People filed the instant writ petition in the Court of Appeal challenging the trial court's order and seeking an additional stay. On March 13, 2017, the Court of Appeal issued an opinion denying the petition. (*People v. Superior Court (Lara)* (2017) 9 Cal.App.5th 753 (*Lara*).) It concluded that Proposition 57 does not apply retroactively under the rationale of *Estrada*, *supra*, 63 Cal.2d 740. But it also concluded that, applied prospectively, Proposition 57 entitles defendant to a fitness hearing.

In the meantime, because the trial court stay expired and the Court of Appeal did not issue its own stay, matters continued at the trial court level. The trial court suspended proceedings in the adult court and ordered defendant released from custody unless the People commenced a juvenile court proceeding within 48 hours. The next day, the People filed a petition in juvenile court alleging defendant committed the crimes already charged in adult court and requesting a hearing to transfer the matter back to adult court. The juvenile court held the hearing but denied the People's request to transfer the matter back to adult court.

3

A contested jurisdictional hearing was scheduled in juvenile court for April 20, 2017.

The People filed a petition for review and requested a stay. On April 19, 2017, we stayed all further proceedings in the juvenile and adult courts pending further order of this court. Later, we granted the petition for review to decide whether Proposition 57's juvenile law provisions apply retroactively to cases filed in adult court before it took effect.[3]

## II. DISCUSSION

### A. Background

"Historically, a child could be tried in criminal court only after a judicial determination, before jeopardy attached, that he or she was unfit to be dealt with under juvenile court law. Since 1975 the procedural requirements for fitness hearings have been established by section 707." (*Juan G. v Superior Court* (2012) 209 Cal.App.4th 1480, 1488.) The general rule used to be that "any individual less than 18 years of age who violates the criminal law comes within the jurisdiction of the juvenile court, which may adjudge such an individual a ward of the court." (*Manduley v. Superior Court* (2002) 27 Cal.4th 537, 548, fn. omitted.)

Amendments to former sections 602 and 707 in 1999 and 2000, some by initiative, changed this historical rule. Under the changes, in specified circumstances, prosecutors were permitted, and sometimes required, to file charges against a juvenile directly in criminal court, where the juvenile would be treated as an adult. (*Manduley v. Superior Court*, *supra*, 27 Cal.4th at pp. 548-

---

**3**     The Court of Appeal issued its opinion, which it believed established the law of the case, after receiving an informal response but without issuing an order to show cause or holding oral argument. (*Lara*, *supra*, 9 Cal.App.5th at pp. 757-773.) The People's petition for review was limited to the merits and did not raise the procedural question. Accordingly, we express no opinion regarding the propriety of this procedure.

4

551; *Juan G. v. Superior Court*, *supra*, 209 Cal.App.4th at pp. 1488-1490.) These provisions were in effect when the prosecution filed the charges against defendant directly in criminal court.

Proposition 57 changed the procedure again, and largely returned California to the historical rule. "Among other provisions, Proposition 57 amended the Welfare and Institutions Code so as to eliminate direct filing by prosecutors. Certain categories of minors . . . can still be tried in criminal court, but only after a juvenile court judge conducts a transfer hearing to consider various factors such as the minor's maturity, degree of criminal sophistication, prior delinquent history, and whether the minor can be rehabilitated. (Welf. & Inst. Code, § 707, subd. (a)(1).)" (*People v. Vela* (2017) 11 Cal.App.5th 68, 72, review granted July 12, 2017, S242298 (*Vela*).)[4]

We must decide whether this requirement of a transfer hearing before a juvenile can be tried as an adult applies to defendant even though he had already been charged in adult court before Proposition 57 took effect. The question has potentially major consequences for juveniles like defendant. While a person convicted of serious crimes in adult court can be punished by a long prison sentence, juveniles are generally treated quite differently, with rehabilitation as the goal.

The *Vela* court summarized the procedures in the juvenile court system. "Generally, any person under the age of 18 who is charged with violating a law is considered a 'minor.' (See § 602.) A 'juvenile court' is a separate, civil division

---

**4**      The hearing to determine whether a juvenile may be treated as an adult used to be called a "fitness hearing." (E.g., *Manduley v. Superior Court*, *supra*, 27 Cal.4th at p. 546.) However, the current section 707, subdivision (a)(1), as amended by Proposition 57, refers to a "motion to transfer" the juvenile to adult court. Accordingly, like some of the Courts of Appeal, we will call the hearing under the current statute a "transfer hearing."

of the superior court. (§ 246.) A prosecutor charges a minor with an offense by filing a juvenile petition, rather than a criminal complaint. (See §§ 653.7, 655.) Minors 'admit' or 'deny' an offense, rather than plead 'guilty' or 'not guilty.' (§ 702.3.) There are no 'trials,' per se, in juvenile court, rather there is a 'jurisdictional hearing' presided over by a juvenile court judge. (§ 602.) The jurisdictional hearing is equivalent to a 'bench trial' in a criminal court. (See Cal. Rules of Court, rule 5.780.) Although a juvenile court judge adjudicates alleged law violations, there are no 'conviction[s]' in juvenile court. (§ 203.) Rather, the juvenile court determines—under the familiar beyond the reasonable doubt standard and under the ordinary rules of evidence—whether the allegations are 'true' and if the minor comes within its jurisdiction. (See § 602 et seq.)

"There is no 'sentence,' per se, in juvenile court. Rather, a judge can impose a wide variety of rehabilitation alternatives after conducting a 'dispositional hearing,' which is equivalent to a sentencing hearing in a criminal court. (§ 725.5; *In re Devin J.* (1984) 155 Cal.App.3d 1096, 1100 [202 Cal.Rptr. 543].) In the more serious cases, a juvenile court can 'commit' a minor to juvenile hall or to the Division of Juvenile Justice (DJJ), formerly known as the California Youth Authority (CYA). In order to commit a minor to the DJJ, the record must show that less restrictive alternatives would be ineffective or inappropriate. (*In re Teofilio A.* (1989) 210 Cal.App.3d 571, 576 [258 Cal.Rptr. 540].) The DJJ, rather than the court, sets a parole consideration date. DJJ commitments can range from one year or less for nonserious offenses, and up to seven years for the most serious offenses, including murder. (See Cal. Code Regs., tit. 15, §§ 4951-4957.) A minor committed to DJJ must generally be discharged no later than 23 years of age. (§ 607, subd. (f).)" (*Vela*, *supra*, 11 Cal.App.5th at pp. 73-74, rev.gr.)

With this background in mind, we now consider whether defendant properly received the benefit of Proposition 57.

6

**B. Whether Proposition 57 Applies to Defendant**

"The Legislature ordinarily makes laws that will apply to events that will occur in the future. Accordingly, there is a presumption that laws apply prospectively rather than retroactively. But this presumption against retroactivity is a canon of statutory interpretation rather than a constitutional mandate. (*Evangelatos v. Superior Court* (1988) 44 Cal.3d 1188, 1224 [246 Cal.Rptr. 629, 753 P.2d 585].) Therefore, the Legislature can ordinarily enact laws that apply retroactively, either explicitly or by implication. (*Tapia v. Superior Court* (1991) 53 Cal.3d 282, 311 [279 Cal.Rptr. 592, 807 P.2d 434] (dis. opn. of Mosk, J.).) In order to determine if a law is meant to apply retroactively, the role of a court is to determine the intent of the Legislature, or in the case of a ballot measure, the intent of the electorate. (*People v. Conley* (2016) 63 Cal.4th 646, 659 [203 Cal.Rptr.3d 622, 373 P.3d 435].)" (*Vela*, *supra*, 11 Cal.App.5th at pp. 72-73, rev.gr.)

In *Estrada*, *supra*, 63 Cal.2d 740, we considered statutes that mitigated the punishment for the crime of escape without force or violence. The statutes were enacted after the petitioner committed the offense but before he was sentenced. We held that the petitioner was "entitled to the ameliorating benefits" of the new statutes. (*Id*. at p. 744.) "When the Legislature amends a statute so as to lessen the punishment it has obviously expressly determined that its former penalty was too severe and that a lighter punishment is proper as punishment for the commission of the prohibited act. It is an inevitable inference that the Legislature must have intended that the new statute imposing the new lighter penalty now deemed to be sufficient should apply to every case to which it constitutionally could apply. The amendatory act imposing the lighter punishment can be applied constitutionally to acts committed before its passage provided the judgment convicting the defendant of the act is not final." (*Id*. at p. 745.)

7

In *Francis*, *supra*, 71 Cal.2d 66, the Legislature modified the punishment for possession of marijuana, which had been a straight felony, to permit it to be treated as a misdemeanor. Relying on *Estrada*, *supra*, 63 Cal.2d 740, we held that this statutory change also applied retroactively to persons whose judgments were not yet final. "Here, unlike *Estrada*, the amendment does not revoke one penalty and provide for a lesser one but rather vests in the trial court discretion to impose either the same penalty as under the former law or a lesser penalty." (*Francis*, at p. 76.) Despite this difference, we found an inference that the Legislature intended retroactive application "because the Legislature has determined that the former penalty provisions may have been too severe in some cases and that the sentencing judge should be given wider latitude in tailoring the sentence to fit the particular circumstances." (*Ibid*.)

We recently summarized *Estrada*'s meaning. "The *Estrada* rule rests on an inference that, in the absence of contrary indications, a legislative body ordinarily intends for ameliorative changes to the criminal law to extend as broadly as possible, distinguishing only as necessary between sentences that are final and sentences that are not." (*People v. Conley*, *supra*, 63 Cal.4th at p. 657 (*Conley*); see *People v. Wright* (2006) 40 Cal.4th 81, 94-95 [*Estrada*'s inference of retroactivity applies to a newly enacted defense].)[5]

Proposition 57's effect is different from the statutory changes in *Estrada*, *supra*, 63 Cal.2d 740, and *Francis*, *supra*, 71 Cal.2d 66. Proposition 57 did not ameliorate the punishment, or possible punishment, for a particular crime; rather,

---

[5] We have occasionally referred to *Estrada* as reflecting a "presumption." (E.g., *People v. Conley*, *supra*, 63 Cal.4th at p. 656; *People v. Brown* (2012) 54 Cal.4th 314, 324.) We meant this to convey that ordinarily it is reasonable to infer for purposes of statutory construction the Legislature intended a reduction in punishment to apply retroactively.

8

it ameliorated the possible punishment for a class of persons, namely juveniles. But the same inference of retroactivity should apply.

In *Vela*, *supra*, 11 Cal.App.5th 68, review granted, the defendant was charged and tried as an adult for crimes, including murder, committed when he was 16 years old. His case was pending on appeal when Proposition 57 was enacted. The court concluded that *Estrada*'s rationale applied, and the defendant was entitled to a transfer hearing.

"Here, for a minor accused of a crime, it is a potential 'ameliorating benefit' to have a neutral judge, rather than a district attorney, determine that he or she is unfit for rehabilitation within the juvenile justice system. While a district attorney has an obligation to be objective and impartial, the duty of that position is also to act as a zealous advocate. (*People v. Eubanks* (1996) 14 Cal.4th 580, 590 [59 Cal.Rptr.2d 200, 927 P.2d 310].) And the impact of the decision to prosecute a minor in criminal court rather than juvenile court can spell the difference between a 16-year-old minor such as Vela being sentenced to prison for 72 years to life, or a discharge from the DJJ's custody at a maximum of 23 years of age. After the passage of Proposition 57, a juvenile court judge can only make that irrevocable decision after receiving a probation report and after conducting a full hearing considering the minor's prior history, the circumstances of the offense, and several other factors relating to his or her youth and immaturity. (§ 707, subd. (a).)

"Applying the reasoning of *Estrada*, we find that by its approval of Proposition 57, . . . the electorate has 'expressly determined' that the former system of direct filing was 'too severe.' (*Estrada*, *supra*, 63 Cal.2d at p. 745.) Further, we find an 'inevitable inference' that the electorate 'must have intended' that the potential 'ameliorating benefits' of rehabilitation (rather than punishment), which now extend to every eligible minor, must now also 'apply to every case to

9

which it constitutionally could apply.' (*Estrada*, at pp. 744-745.)" (*Vela*, *supra*, 11 Cal.App.5th at pp. 77-78, rev.gr.)

*Vela* also cited *Francis*, *supra*, 71 Cal.2d 66. "Here, the electorate has taken away from prosecutors the discretion to directly file cases against minors in criminal courts. As a result—similar to the discretion of a judge to reduce a crime from a felony to a misdemeanor *in some cases*—a juvenile court judge can now exercise his or her discretion *in some cases* and determine that a minor should remain in the juvenile justice system rather than face prosecution and sentencing in the criminal courts. For those minors who remain in the juvenile court, with its primary emphasis on rehabilitation rather than punishment, the potential effect of that 'ameliorating benefit' is analogous to the potential reduction in a criminal defendant's sentence as in *Estrada* and *Francis*." (*Vela*, *supra*, 11 Cal.App.5th at p. 80, rev.gr.)

We agree with *Vela* that *Estrada*'s inference of retroactivity applies here. Proposition 57 is an "ameliorative change[] to the criminal law" that we infer the legislative body intended "to extend as broadly as possible." (*Conley*, *supra*, 63 Cal.4th at p. 657.) Nothing in Proposition 57 itself or the ballot materials rebuts this inference. The parties cite different materials to support the argument that the electorate either did or did not intend a retroactive application. They are inconclusive. Proposition 57 and the ballot materials are silent on the question. But some hints can be gleaned as to electoral intent. One stated purpose of the act is to "[s]top the revolving door of crime by emphasizing rehabilitation, especially for juveniles." (Voter Information Guide, Gen. Elec. (Nov. 8, 2016) text of Prop. 57, p. 141.) Proposition 57 also provides that the "act shall be liberally construed to effectuate its purposes." (*Id*., p. 146.) These provisions are not alone decisive, but they support the conclusion that *Estrada*'s inference of retroactivity is not rebutted.

10

After finding that the defendant was entitled to a transfer hearing, the *Vela* court considered the remedy. It began by noting that the "jury's convictions, as well as its true findings as to the sentencing enhancements, will remain in place. Nothing is to be gained by having a 'jurisdictional hearing,' or effectively a second trial, in the juvenile court." (*Vela*, *supra*, 11 Cal.App.5th at p. 81, rev.gr.) Noting that an "appellate court 'may, if proper, remand the cause to the trial court for such further proceedings as may be just under the circumstances[]' (Pen. Code, § 1260)," the court ordered a limited remand. (*Id*. at p. 81.)

Specifically, the *Vela* court ordered as follows: "Here, under these circumstances, Vela's conviction and sentence are conditionally reversed and we order the juvenile court to conduct a juvenile transfer hearing. (§ 707.) When conducting the transfer hearing, the juvenile court shall, to the extent possible, treat the matter as though the prosecutor had originally filed a juvenile petition in juvenile court and had then moved to transfer Vela's cause to a court of criminal jurisdiction. (§ 707, subd. (a)(1).) If, after conducting the juvenile transfer hearing, the court determines that it would have transferred Vela to a court of criminal jurisdiction because he is 'not a fit and proper subject to be dealt with under the juvenile court law,' then Vela's convictions and sentence are to be reinstated. (§ 707.1, subd. (a).) On the other hand, if the juvenile court finds that it would *not* have transferred Vela to a court of criminal jurisdiction, then it shall treat Vela's convictions as juvenile adjudications and impose an appropriate 'disposition' within its discretion." (*Vela*, *supra*, 11 Cal.App.5th at p. 82, rev.gr.)

With one exception, other Courts of Appeal, including the Court of Appeal in this case, have rejected *Estrada*'s application, although two, including the Court of Appeal in this case, have granted the same relief under the theory that the defendant is entitled to a transfer hearing even applying Proposition 57 prospectively. (*People v. Suarez* (2017) 17 Cal.App.5th 1272 [holding, over a

11

dissent, that *Estrada* does not apply, and the defendant is not entitled to a transfer hearing]; *People v. Brewer* (2017) 17 Cal.App.5th 471 [holding, over a dissent, that *Estrada* does not apply, and the defendant is not entitled to a transfer hearing]; *People v. Navarra* (2017) 16 Cal.App.5th 173 [holding that *Estrada* does not apply, and the defendant is not entitled to a transfer hearing], review granted January 24, 2018, S245513; *People v. Superior Court (Walker)* (2017) 12 Cal.App.5th 687 [holding that *Estrada* does not apply, and the defendant is not entitled to a transfer hearing], review granted September 13, 2017, S243072; *People v. Marquez* (2017) 11 Cal.App.5th 816 [holding that *Estrada* does not apply, and the defendant is not entitled to a transfer hearing], review granted July 26, 2017, S242660; *People v. Mendoza* (2017) 10 Cal.App.5th 327 [holding that *Estrada* does not apply, and the defendant is not entitled to a transfer hearing], review granted July 12, 2017, S241647; *People v. Cervantes* (2017) 9 Cal.App.5th 569 [holding that *Estrada* does not apply but, applying Proposition 57 prospectively, the defendant is entitled to a transfer hearing], review granted May 17, 2017, S241323.)  The exception is *People v. Pineda* (2017) 14 Cal.App.5th 469, review granted December 13, 2017, S244451, which, over a dissent, agreed with *Vela*, *supra*, 11 Cal.App.5th 68, review granted.

The courts finding *Estrada* inapplicable generally believed that a recent decision from this court precluded them from concluding otherwise.  (*People v. Brown*, *supra*, 54 Cal.4th 314 (*Brown*).)  In *Brown*, we refused to give retroactive effect to a statute that temporarily increased the rate at which prisoners in local custody could earn conduct credits against their sentences for good behavior.  As we explained, "[c]onduct credits encourage prisoners to conform to prison regulations, to refrain from criminal and assaultive conduct, and to participate in work and other rehabilitative activities."  (*Id*. at p. 317.)  We rejected the argument that, under *Estrada*, the temporary increase in the ability to earn conduct credits

12

applied retroactively.  We explained that the statutory change did "not alter the penalty for any crime; a prisoner who earns no conduct credits serves the full sentence originally imposed.  Instead of addressing punishment for past criminal conduct, the statute addresses *future conduct* in a custodial setting by providing increased incentives for good behavior."  (*Id*. at p. 325.)

We agree with the *Vela* court's distinction of *Brown*, *supra*, 54 Cal.4th 314.  "But under Proposition 57, a transfer hearing conducted by a juvenile court judge does not address future conduct or provide incentives for good behavior as in *Brown*.  Rather, the potential benefit of a juvenile transfer hearing is that it may, in fact, dramatically alter a minor's effective sentence or 'juvenile disposition' for past criminal conduct.  Thus, just as the Supreme Court reasoned in *Estrada* and *Francis*, we infer that the electorate intended the possible ameliorating benefits of Proposition 57 to apply to every minor to whom it may constitutionally apply, including Vela."  (*Vela*, *supra*, 11 Cal.App.5th at p. 81, rev.gr.)

In language the People and some of the Courts of Appeal cite, we "note[d] the limited role *Estrada* properly plays in our jurisprudence of prospective versus retrospective operation."  (*Brown*, *supra*, 54 Cal.4th at p. 324.)  We said that "*Estrada* is today properly understood, not as weakening or modifying the default rule of prospective operation codified in [Penal Code] section 3, but rather as informing the rule's application in a specific context by articulating the reasonable presumption that a legislative act mitigating the punishment for a particular criminal offense is intended to apply to all nonfinal judgments."  (*Ibid*.)  However, we did not mean to state, and could not have held as binding precedent, that under no other circumstances, no matter how similar to *Estrada*, and how different from *Brown*, could *Estrada*'s inference in favor of retroactivity apply.

Indeed, in *Brown* itself, we went on to explain that the statute at issue—involving credits for future behavior—is not "analogous" to the *Estrada* situation,

13

and *Estrada*'s "logic" does not apply. (*Brown*, *supra*, 54 Cal.4th at p. 325.) Here, however, the provisions of Proposition 57 at issue *are* analogous to the *Estrada* situation, and *Estrada*'s logic *does* apply. *Brown* presents no impediment to invoking *Estrada*'s inference in this case.

The People also cite *Conley*, *supra*, 63 Cal.4th 646. In that case, we considered the "Three Strikes Reform Act of 2012 (Reform Act or Act) (Prop. 36, as approved by voters, Gen. Elec. (Nov. 6, 2012)), which amended the law to reduce the punishment prescribed for certain third strike defendants." (*Id.* at p. 651.) We found *Estrada*'s inference of retroactivity inapplicable. But that was because the legislation contained *its own retroactivity provision*. It permitted persons sentenced under the Three Strikes law, including those whose judgments were final, to seek resentencing and a reduced sentence, but subject to certain conditions. (*Id.* at pp. 651-652, citing Pen. Code, § 1170.126.) Accordingly, we held that persons already sentenced, including those whose judgments were not final, were not "entitled to *automatic* resentencing" without regard to the conditions. (*Id.* at pp. 655-656.)

We explained that "the Legislature (or here, the electorate) may choose to modify, limit, or entirely forbid the retroactive application of ameliorative criminal law amendments if it so chooses." (*Conley*, *supra*, 63 Cal.4th at p. 656.) *Estrada* "does not govern when the statute at issue includes a 'saving clause' providing that the amendment should be applied only prospectively." (*Conley*, at p. 656.) "[U]nlike the statute at issue in *Estrada*, *supra*, 63 Cal.2d 740, the Reform Act is not silent on the question of retroactivity. Rather, the Act expressly addresses the question in [Penal Code] section 1170.126, the sole purpose of which is to extend the benefits of the Act retroactively." (*Id.* at p. 657.) "[T]he voters adopted a different approach [than that in *Estrada*]. They took the extraordinary step of extending the retroactive benefits of the Act beyond the bounds contemplated by

14

*Estrada*—including even prisoners serving *final* sentences within the Act's ameliorative reach—but subject to a special procedural mechanism for the recall of sentences already imposed." (*Id*. at pp. 657-658.) In short, because the legislation contained its own retroactivity provision, we did not apply *Estrada*'s different kind of retroactivity. In this respect, Proposition 57 is like the legislation in *Estrada*, not *Conley*.

One Court of Appeal cited the complexity inherent in providing a transfer hearing to juveniles whose cases are already pending in adult court as another reason to deny such a hearing. (*People v. Superior Court (Walker)*, *supra*, 12 Cal.App.5th at pp. 704-705 & fn. 20, rev.gr.) The People echo that argument in this case. As examples of the complexity, the *Walker* court cited the remedy provided in *Vela*, *supra*, 11 Cal.App.5th 68, review granted, which we have discussed, and in *People v. Cervantes*, *supra*, 9 Cal.App.5th at page 621, review granted, which was similar to the *Vela* remedy as adapted to the precise situation.

We agree the appropriate remedy can be somewhat complex. But complexity is inherent when juveniles are to be treated as adults. The procedure Proposition 57 imposes—filing the matter first in juvenile court, requesting and conducting a transfer hearing, then transferring the matter to adult court—is far more complex than the procedure for adults—simply filing the case in adult court. Moreover, the remedy that Penal Code section 1170.17 provides for juveniles charged directly in adult court but convicted only of some lesser charge— discussed in the next paragraph—is rather complex. But we believe remedies like those provided in *Vela* and *Cervantes* are readily understandable, and the courts involved can implement them without undue difficulty. The potential complexity in providing juveniles charged directly in adult court with a transfer hearing is no reason to deny the hearing.

15

Amicus curiae San Diego County District Attorney cites Penal Code section 1170.17, which Proposition 57 left unaffected, to support its argument that the proposition does not apply retroactively. Section 1170.17 provided protection to juveniles who were properly charged directly in adult court but then convicted only of a charge or charges that would not permit or require such direct filing, or possibly not permit treatment as an adult at all. Generally, when that happens, section 1170.17 requires the trial court either to have the juvenile treated as a juvenile (if the conviction is for a crime that does not permit treatment as an adult) (Pen. Code, § 1170.17, subd. (d); see *id.*, § 1170.19, subd. (b)), or to hold a hearing, similar to a fitness hearing, to determine whether the juvenile should continue to be treated as an adult (Pen. Code, § 1170.17, subds. (b), (c)). Amicus curiae argues that, because today no charge may be filed directly in adult court, persons like defendant, who were not convicted before Proposition 57 took effect, will always receive the equivalent of a fitness hearing (or automatic treatment as a juvenile). By leaving this provision intact, amicus curiae further argues, the voters intended not to apply Proposition 57 retroactively.

We need not decide how Penal Code section 1170.17 might apply post-Proposition 57, for its continuing existence does not overcome the inference of retroactivity. That section was drafted for a different procedural posture than Proposition 57 and is a poor fit both textually and practically for a Proposition 57 remedy. Textually, subdivision (c) of section 1170.17 applies to juveniles whose convictions and age make them subject to a "rebuttable presumption" of juvenile-court fitness. But as amended by Proposition 57, Welfare and Institutions Code section 707 no longer establishes any such rebuttable presumption of fitness, thus suggesting the voters did not intend hearings under Penal Code section 1170.17 to replace Proposition 57 transfer hearings. Moreover, as a practical matter, postponing juvenile court proceedings until *after* the juvenile has been convicted

16

in adult court, as occurs under Penal Code section 1170.17, would entail conducting jury trials that will, in some cases, then be obviated by proceedings in the juvenile court. That the voters intended to create such a wasteful system is unlikely.

Additionally, in two respects, Penal Code section 1170.17 is far less favorable to juveniles than Proposition 57. First, under Penal Code section 1170.17, the juvenile is treated as an adult at least until conviction in adult court and, depending on the exact nature of the ultimate conviction, even then would continue to be treated as an adult unless and until the court ordered juvenile treatment; under Proposition 57, the juvenile is initially treated as a juvenile and can be treated as an adult only if and when a court transfers the matter to adult court. Second, under amicus curiae's interpretation of Penal Code section 1170.17, a juvenile who was *convicted* before Proposition 57 took effect can *never* benefit from that section. Nothing in that section's continuing existence rebuts *Estrada*'s inference of retroactivity.

For these reasons, we conclude that defendant properly received the benefit of Proposition 57.

### III. CONCLUSION

The Court of Appeal erred in rejecting the application of *Estrada*, *supra*, 63 Cal.2d 740, but it reached the correct result. Accordingly, we affirm its judgment, although not its reasoning, and lift the stay we previously imposed.

17

We also disapprove the Court of Appeal's opinion in this case (*People v. Superior Court (Lara)*, *supra*, 9 Cal.App.5th 753), and the opinions in *People v. Suarez*, *supra*, 17 Cal.App.5th 1272; *People v. Brewer*, *supra*, 17 Cal.App.5th 471; *People v. Navarra*, *supra*, 16 Cal.App.5th 173, review granted; *People v. Superior Court (Walker)*, *supra*, 12 Cal.App.5th 687, review granted; *People v. Marquez*, *supra*, 11 Cal.App.5th 816, review granted; *People v. Mendoza*, *supra*, 10 Cal.App.5th 327, review granted; and *People v. Cervantes*, *supra*, 9 Cal.App.5th 569, review granted, to the extent they are inconsistent with this opinion.

**CHIN, J.**

**WE CONCUR:**

**CANTIL-SAKAUYE, C.J.**
**CORRIGAN, J.**
**LIU, J.**
**CUÉLLAR, J.**
**KRUGER, J.**
**ROBIE, J.\***

_____
\* Associate Justice of the Court of Appeal, Third Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** People v. Superior Court (Lara)
_____

**Unpublished Opinion**
**Original Appeal**
**Original Proceeding**
**Review Granted** XXX 9 Cal.App.5th 753
**Rehearing Granted**

_____

**Opinion No.**S241231
**Date Filed:** February 1, 2018
_____

**Court:** Superior
**County:** Riverside
**Judge:** Richard Todd Fields

_____

**Counsel:**

Michael A. Hestrin, District Attorney, Elaina Gambera Bentley, Assistant District Attorney, Kelli M. Catlett, Ivy B. Fitzpatrick and Donald W. Ostertag, Deputy District Attorneys, for Petitioner.

Summer Stephan, District Attorney (San Diego), Mark A. Amador, Linh Lam and Peter J. Cross, Deputy District Attorneys, for San Diego County District Attorney as Amicus Curiae on behalf of Petitioner.

No appearance for Respondent.

Steven S. Mitchell; Steven L. Harmon, Public Defender, and Laura Arnold, Deputy Public Defender, for Real Party in Interest.

Rourke Frances Stacy, Public Defender (Los Angeles); Richard L. Braucher, Susan Lynn Burrell and David John Briggs for Los Angeles County Public Defender and Pacific Juvenile Defender Center as Amici Curiae on behalf of Real Party in Interest.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Donald W. Ostertag
Deputy District Attorney
3960 Orange Street
Riverside, CA  92501
(951) 955-0870

Laura Arnold
Deputy Public Defender
4200 Orange Street
Riverside, CA  92501
(951) 304-5600