Filed 1/21/21  P. v. Rockhold CA4/1

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>MICHAEL ANDREW ROCKHOLD,<br><br>    Defendant and Appellant. | D076615<br><br><br>(Super. Ct. No. SCN396034) |


APPEAL from a judgment of the Superior Court of San Diego County, Michael D. Washington, Judge.  Affirmed.


Ava R. Stralla, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Daniel Rogers and Christopher P. Beesley, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant Michael Andrew Rockhold was convicted by jury of one count of transportation of methamphetamine for sale (Health & Saf. Code, §

11379, subd. (a)), and two counts of possession of methamphetamine for sale (Health & Saf. Code, § 11378). Defendant stipulated that he committed one of the crimes while he was released on bail (Pen. Code,[1] § 12022.1), and admitted that he had three prior convictions for which he had served a term in prison (§ 667.5, subd. (b)). On September 27, 2019, the court sentenced defendant to a total term of six years eight months in local custody, stayed the enhancements for the prior prison convictions, and imposed fees, fines and assessments. Defendant timely appealed.

We strike the enhancements for the prior prison convictions, and otherwise affirm the conviction.

## STATEMENT OF FACTS

*Counts 1 and 2 - Transportation and Possession for Sale, January 28, 2019*

In the early morning hours of January 28, 2019, an Oceanside police officer observed defendant's car drive past his marked vehicle and immediately step on the brakes to slow down. Defendant then pulled into a gas station and parked at the air and water pumps, but he remained sitting in the car. The officer thought this conduct strange. He walked toward defendant and when defendant opened his car door, the officer recognized him from prior contacts. The officer conducted a pat-down search and found that defendant had an illegal methamphetamine pipe, with methamphetamine residue, in the defendant's pocket.

The officer searched defendant's car and found more than 100 grams of methamphetamine hidden in the roof. A digital scale and equipment for taking credit card payments were in a messenger bag and computer bag, respectively, behind the passenger seat.

---

[1] Further statutory references are to the Penal Code unless otherwise designated.

A narcotics expert testified that the amount of methamphetamine found was a large amount and was valued at about $700 to $800. However, if divided into small portions for resale, it could net $3,000 to $5,000 for the seller. Text messages found on defendant's phone were indicative of sales transactions. The expert opined that based on all the circumstances, including the large amount of methamphetamine, the drug-sale text messages, the scale and the credit card reader to collect payment, the methamphetamine was transported and possessed for sales.

*Count 3 - Possession for Sale, March 7, 2019*

On the evening of March 7, 2019, an Oceanside police officer saw defendant and his wife walking along a street in Oceanside. Defendant appeared nervous as the officer approached. He took a backpack off his shoulder and handed it to his wife. As he did so, a clear baggie fell out of the backpack. Defendant stepped in front of the baggie to try to hide it from the officer. When the officer asked what had fallen, defendant denied that anything fell.

The baggie was retrieved by the officer. It contained two baggies inside it. One held 12 grams of methamphetamine and the other held 13.61 grams of methamphetamine—almost an ounce in total.

After being advised of and waiving his rights, defendant talked with the officer. He told the officer he did not use much methamphetamine, and preferred marijuana. Defendant pointed out he did not have the physical characteristics of a heavy methamphetamine user, as he had all his teeth. Defendant knew that a gram of methamphetamine cost about $20 to $30, and that an ounce of methamphetamine weighed 28 to 30 grams and cost about $400 to $500. Defendant claimed that the backpack was not his. He said

someone gave him the backpack with electronics in it so that defendant could fix them. The backpack held a couple of cell phones and a laptop computer.

An expert for the prosecution testified that it would be unusual for a person who only used methamphetamine to carry around a large amount like an ounce. Users usually carry only the amount they would use that day, typically one-tenth of a gram at a time. Users carry smaller amounts to avoid arrest for sales and to avoid being robbed. Defendant was stopped across the street from his home, but said he was on his way to a store or to visit a friend. It was odd, the expert said, that defendant, if only a user, would have carried the large amount of drugs with him instead of leaving the drugs at home.

The expert offered the opinion that the methamphetamine was possessed for sales. In reaching this conclusion the expert relied on an ounce of methamphetamine costing about $250 to $350, but which could be sold for much more when broken up into single-dose units. He noted that here, the large amount of methamphetamine was divided into two separate baggies.

*Defense*

Defendant testified that he demolished and renovated property for resale. He also stated he repaired electronics. Defendant said he and his wife both used methamphetamine and marijuana. His wife primarily used methamphetamine, whereas defendant preferred marijuana to ease continuing pain from a wound sustained when he was in the armed forces.

Defendant said that the car he was driving in January did not belong to him and he did not put the methamphetamine in the roof. He also claimed that the backpack he was carrying in March was not his. He said someone had given him the backpack so that he could repair the electronics that were inside it. The person who gave him the backpack, he claimed, was a heavy

4

methamphetamine user. Defendant said he knew nothing about the baggie that fell out of the backpack.

## DISCUSSION

## I

### *Sufficient Evidence of Possession of Methamphetamine for Sale*

Defendant contends there was insufficient evidence to support the jury's finding that he had the intent to sell the methamphetamine that he possessed on March 7, 2019, count 3.

A. *Standard of Review*

On review for sufficient evidence we apply a well settled standard. "[W]e must determine whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime . . . beyond a reasonable doubt. We review the entire record in the light most favorable to the judgment below to determine whether it discloses sufficient evidence—that is, evidence that is reasonable, credible, and of solid value—supporting the decision, and not whether the evidence proves guilt beyond a reasonable doubt. . . . If the circumstances reasonably justify the findings made by the trier of fact, reversal of the judgment is not warranted simply because the circumstances might also reasonably be reconciled with a contrary finding." (*People v. Jennings* (2010) 50 Cal.4th 616, 638–639 (*Jennings*); *Jackson v. Virginia* (1979) 443 U.S. 307, 318–319.) To prove possession for sale, the prosecution must prove beyond a reasonable doubt that the defendant had the specific intent to sell the contraband. Intent is usually proved by circumstantial evidence. (*People v. Johnson* (2019) 32 Cal.App.5th 26, 58.)

B. *Analysis*

Defendant contends that the evidence was insufficient to support the finding that he possessed the methamphetamine for sale rather than for personal use. Defendant relies on the lack of indicia of sales, such as scales or pay-owe sheets, and the expert's testimony that two heavy users could use an ounce of methamphetamine in two weeks and that defendant and his wife might have purchased two weeks' supply in bulk to save money.

The expert acknowledged that defendant could have possessed the methamphetamine for the personal use of himself and his wife but said it was unlikely. Carrying an ounce of methamphetamine was equivalent to walking around with thousands of dollars in one's pocket, the expert testified, and it would subject the user to being robbed or arrested for possession of methamphetamine for sale. If robbed, the user could not report the loss to the police. Users ordinarily left their drugs at home and carried only enough for the next dose, which was usually a very small amount. Further, the expert said he had never met anyone who used an ounce in a month. That would amount to about .2 grams, three or four times per day. Defendant did not have the ravaged body of a person who used methamphetamine so heavily.

In addition, the methamphetamine had been divided into two almost equal baggies, which is typical packaging for a person preparing to sell the drug. Defendant was familiar with the prices of both a large quantity of the drug and of an individual dose, although he claimed he used marijuana more than methamphetamine. In addition, indicia of sales other than amount and packaging were rarely present during a street arrest. Also, the expert stated pay-owe sheets were obsolete with the advent of smart phones. Finally, the

6

expert noted that dealers generally used a scale within an enclosed room and did not carry scales when out and about on the street.

We conclude substantial evidence supports the jury's conclusion that on March 7, 2019, defendant possessed the methamphetamine for sale.

## II

### *Prior Prison Convictions*

Defendant alleges he is entitled to the benefit of the ameliorative amendment to section 667.5, which makes prior prison conviction enhancements applicable only when the prior conviction was for a sexually violent offense. (See *In re Estrada* (1965) 63 Cal.2d 740, 744–745; *People v. Superior Court (Lara)* (2018) 4 Cal.5th 299, 306–308.) The People agree. They note that none of defendant's three, one-year prior prison term enhancements qualify as sexually violent offenses. We agree as well. Therefore, we order the prior convictions stricken.

## III

### *Fines and Fees*

Defendant's general contention is that the imposition of fines, fees and assessments without a finding that he had the ability to pay them violated his rights to due process, equal protection, and to be protected from excessive fines. He relies principally upon *People v. Dueñas* (2019) 30 Cal.App.5th 1157 (*Dueñas*). Numerous courts, including ours, have weighed in on the merits of these arguments.[2] We presume that the court considered

---

[2]  For example, the courts in *People v. Hicks* (2019) 40 Cal.App.5th 320, 326, review granted Nov. 26, 2019, S258946, and *People v. Aviles* (2019) 39 Cal.App.5th 1055, 1061 (*Aviles*) disagreed with *Dueñas*, whereas the court in *People v. Belloso* (2019) 42 Cal.App.5th 647, 654–656, review granted Mar. 11, 2020, S259755, followed *Dueñas*. The Supreme Court has granted review in the lead case of *People v. Kopp* (2019) 38 Cal.App.5th 47, 95–96, review granted November 13, 2019, S257844 (*Kopp*).

7

defendant's ability to pay, and that in any event error was harmless beyond a reasonable doubt.

### A. *Proceedings Below*

The court imposed a restitution fine of $2,100 (§1202.4, subd. (b)), $120 court operations assessment (§ 1465.8), $90 criminal conviction assessment (Gov. Code, § 70373), $205 lab analysis fee (Health & Saf. Code, § 11372.5), $615 drug program fee (Health & Saf. Code, § 11372.7) and a $154 criminal justice administration fee (Gov. Code, § 29550). The court ordered these fines and fees to be paid pursuant to section 2085.5, which provides for payment of fines from an incarcerated defendant's prison wages and trust account.

After the court imposed the fines and fees, defense counsel asked the court to consider staying the fines and fees pending an ability-to-pay hearing, and to endorse fire camp. The court authorized fire camp if defendant were eligible. The court did not order an ability-to-pay hearing. It stated it would allow defendant to pay the fines and fees from his earnings in custody.

Thus, for purposes of our analysis, we conclude defendant did not waive any right he might have to an ability-to-pay hearing. Essentially, however, the sentencing court concluded he did not need to present evidence of ability to pay. It permitted payment from earnings while in custody. It does not appear defendant argued the fines and fees were so onerous as to violate the proscriptions against cruel or unusual punishment.

### B. *Analysis*

#### 1. *The Court Considered Ability to Pay*

A court may consider the defendant's inability to pay when it imposes a restitution fine greater than the $300 minimum. (§ 1202.4, subd. (c).) A separate hearing on ability to pay is not required, and the court is not

8

required to state its express findings on the factors bearing on the amount to be paid.  (*Id*. at subd. (d).)

Defendant testified to his work history and employment.  The court was thus aware of important aspects of defendant's ability to pay the amounts recommended by the presentence report.  It substantially reduced the $8,100 restitution fine recommended in the report to $2,100.  We presume the court took its knowledge of defendant's background into consideration in ordering the fines, fees and assessments paid from earnings while incarcerated.  It did not require defendant to produce additional earnings documentation.  In effect the court concluded that any payment should come from what he earned in custody.  (See *In re Marriage of Winternitz* (2015) 235 Cal.App.4th 644, 653–654 [we presume " 'that the court knew and applied the correct statutory and case law' "].)

Defendant contends that he will not be able to earn wages while in local custody, or if he earns wages they will be minimal.  Defendant forfeited this argument by failing to raise it in the trial court when sufficiency of custody wages were discussed.  We will not consider factual arguments that were not first presented in the trial court.  (*Pinter-Brown v. Regents of the University of California* (2020) 48 Cal.App.5th 55, 86 [appellate review limited to record before lower court].)

### 2.  *Harmless Beyond a Reasonable Doubt*

Even if the trial court was constitutionally required to further consider defendant's ability to pay the fines, fees, and assessments before imposing them, and failed to do so, any error was harmless beyond a reasonable doubt.  (*Chapman v. California* (1967) 386 U.S. 18, 24; *People v. Jones* (2019) 36 Cal.App.5th 1028, 1035 (*Jones*) [applying *Chapman* standard of harmless error analysis to *Dueñas* error].)

9

The burden is on defendant to show his inability to pay. (§ 1202.4, subd. (c).) He made no showing in the trial court that he was unable to work. Defendant was sentenced to six years eight months of local prison. The ability to pay fees and fines from custody wages has been held sufficient to find any error harmless beyond a reasonable doubt. (*People v. Lowery* (2020) 43 Cal.App.5th 1046, 1060–1061; *Jones*, *supra*, 36 Cal.App.5th at p. 1035.) As noted above, we do not consider defendant's contention that he will not earn enough in local custody to pay the fees and fines because defendant failed to raise that argument below.

## DISPOSITION

We strike the three one-year enhancements for defendant's prior prison convictions (see § 667.5). The trial court is directed to prepare a corrected abstract of judgment reflecting this change, and to forward a certified copy of the corrected abstract to the Department of Corrections and Rehabilitation. In all other respects the judgment is affirmed.

BENKE, Acting P. J.

WE CONCUR:


HUFFMAN, J.


GUERRERO, J.

10