Filed 10/27/21  P. v. Hall CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E072463 |
| v. | (Super.Ct.Nos. INF1500253 & INF1500502) |
| ELIJAH TIREK HALL et al., | |
| Defendants and Appellants. | OPINION |

APPEAL from the Superior Court of Riverside County. Russell L. Moore, Judge. Affirmed.

Daniel J. Kessler, under appointment by the Court of Appeal, for Defendant and Appellant Elijah Hall.

Lynda A. Romero, under appointment by the Court of Appeal, for Defendant and Appellant Anthony Torres.

1

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Michael Pulos and Kathryn Kirschbaum, Deputy Attorneys General, for Plaintiff and Respondent.

Elijah Hall appealed from a judgment entered after a jury convicted him of various gang-related offenses (committed when he was 15 years old) and the trial judge sentenced him to 65 years to life in state prison. While Hall's appeal was pending, Proposition 57 raised the minimum age a minor can be tried as an adult to age 16. (Sen. Bill No. 1391 (2017-2018 Reg. Sess.) (Stats. 2018, ch. 1012, § 1).) Following the procedure approved in *People v. Superior Court (Lara)* (2018) 4 Cal.5th 299 (*Lara*), the trial judge recalled Hall's sentence and transferred his case to juvenile court, where the judge "treat[ed the] convictions as juvenile adjudications" and held a hearing to impose an appropriate disposition. (*Id.* at p. 310; see also Welf. & Inst. Code, §§ 602, 702, 706.) After that hearing and his transfer to the Department of Juvenile Justice, Hall informed us he wished to proceed with his appeal, which we have reinstated as an appeal from a judgment in a juvenile criminal proceeding. (Welf. & Inst. Code, §800.)

Hall's challenge is aimed at the fairness of the underlying jury trial that serves as the basis for his juvenile adjudications. He argues the trial judge violated his due process rights by instructing the jury with CALCRIM No. 315, which covers eyewitness identification evidence and tells the jury to consider, among other factors, the witness's level of certainty when making the identification. (CALCRIM No. 315.) Because the California Supreme Court recently rejected this argument and concluded CALCRIM No.

2

315's certainty factor does not violate due process (*People v. Lemcke* (2021) 11 Cal.5th 644 (*Lemcke*)), we affirm the judgment.[1]

# I

# FACTS

### A. *Robbery of Ismael*

Around midnight on February 7, 2015, Ismael D. was outside his home when he noticed a black Chevy Silverado driving by at an unusually slow pace. Ismael asked the driver if he could help him and, after a brief exchange, the driver got out of the truck, showed Ismael his gun, and asked him if he knew anyone from a local gang called "Cathedral City." When Ismael responded that he didn't, Hall's codefendant Torres got out of the truck. Torres demanded Ismael empty his pockets, and Hall hit Ismael in the face with a rifle. More people got out of the truck then, all armed with weapons. Ismael emptied his pockets and handed over his belongings, and the group began to beat him. When Ismael's wife noticed what was happening, she yelled through the window that she was calling the police. The group got back into the truck and fled.

### B. *Home Invasion Robbery of Multiple Victims*

Shortly after robbing Ismael, the group went to the home of Duane S., barged into the bedroom where Duane was hanging out with his brother and his girlfriend, and demanded everyone empty their pockets. One of the members of the group said he was

---

**1** Hall's codefendant, Anthony Torres, filed an appeal raising the same argument Hall makes here, but he abandoned his challenge after our Supreme Court issued their decision in *Lemcke*.

from "Dream Homes" (another local gang) and was there to collect on a drug debt. The group took $40 and a computer tablet Duane and his brother had been using moments before to record a rap song. Before leaving the room, Hall struck Duane in the face with a rifle.

The group proceeded down the hall to another room in the house where Duane's girlfriend's son and two of his friends were playing video games. They kicked down the locked door, and Hall and Torres drew their guns. The group took several items, including a cell phone and a gaming system, and one of the intruders struck one of the victims in the face with a gun. The group yelled "Dream Homes" as they fled the scene. The victims saw the intruders drive away in a black Chevy Silverado and immediately called the police.

When officers near the area spotted a truck matching that description, the driver refused to pull over. This initiated a relatively brief pursuit that ended when the driver crashed into a curb, sending the occupants scattering in an attempt to hide. The officers found Hall crouched in a nearby bush, carrying a cellphone that belonged to one of the victims. Police recovered the rest of the stolen property inside the truck, including the tablet Duane had been rapping into, which continued to record after the group stole it, picking up their discussion of the robbery they'd just committed. The prosecution played this recording for the jury, and Hall's first name, Elijah, can be heard a number of times. The prosecution also presented evidence that Hall and Torres were members of the Cathedral City gang Dream Homes.

4

C.       *Eyewitness Identifications*

The same night as the robberies, three of the victims identified Hall as one of the perpetrators from a photographic lineup. These three victims also identified Hall in court during their trial testimony. Two other victims gave a qualified identification of Hall from a photographic lineup. One said Hall "might have been" one of the robbers. The other said Hall "looked familiar"; however, during trial he identified Hall as one of the perpetrators.

Without an objection or request for modification from Hall, the trial judge instructed the jury with CALCRIM No. 315, the standard Judicial Council instruction regarding eyewitness identification. That instruction directs the jury to consider up to 15 factors in evaluating eyewitness identification testimony, one of which is the witness's level of certainty. It says in relevant part: "You have heard eyewitness testimony identifying the defendant. As with any other witness, you must decide whether an eyewitness gave truthful and accurate testimony. [¶] In evaluating identification testimony, consider the following questions: [¶] ... [¶] How certain was the witness when he or she made an identification?"[2] (CALCRIM No. 315.)

---

[2] The other 14 factors are: "Did the witness know or have contact with the defendant before the event?"; "How well could the witness see the perpetrator?"; "What were the circumstances affecting the witness's ability to observe, such as lighting, weather conditions, obstructions, distance, [and] duration of observation?"; "How closely was the witness paying attention?"; "Was the witness under stress when he or she made the observation?"; "Did the witness give a description and how does that description compare to the defendant?"; "How much time passed between the event and the time when the witness identified the defendant?"; "Was the witness asked to pick the perpetrator out of a group?"; "Did the witness ever fail to identify the defendant?"; "Did

*[footnote continued on next page]*

D.	*Verdict*

The jury convicted Hall of six counts of robbery and one count of active participation in a criminal street gang. (Pen. Code, §§ 211, 186.22, subd. (a).) As to the robbery counts, the jury also found true that the crimes were committed for the benefit of a criminal street gang (*id.*, § 186.22, subd, (b)), that Hall personally used a firearm (*id.*, § 12022.53, subd. (b)), and that a principal personally used a firearm (*id.*, § 12022.53, subd. (e)). As noted, the trial judge sentenced Hall to state prison but later recalled his sentence and transferred his case to juvenile court for a disposition hearing. (See *Lara*, *supra*, 4 Cal.5th at p. 310; Welf. & Inst. Code, §§ 602, 702, 706.)

Hall filed a timely notice of appeal.

# II

# ANALYSIS

Hall argues the trial judge erred by failing to remove witness certainty from CALCRIM No. 315's list of factors for the jury to consider when evaluating eyewitness identifications. Citing to case law noting that scientific studies have found a weak correlation between witness certainty and accuracy, he argues the error violated his constitutional due process rights. (E.g., *People v. Sanchez* (2016) 63 Cal.4th 411, 462 (*Sanchez*).)

---

the witness ever change his or her mind about the identification?"; "Are the witness and the defendant of different races?"; "Was the witness able to identify other participants in the crime?"; "Was the witness able to identify the defendant in a photographic or physical lineup?"; and "Were there any other circumstances affecting the witness's ability to make an accurate identification?" (CALCRIM No. 315.)

The People argue we should follow the California Supreme Court's holding in *Sanchez* and find Hall's argument forfeited because he did not object to the instruction or ask the trial judge to remove the certainty factor. (*Sanchez*, *supra*, 63 Cal.4th at p. 461 ["If defendant had wanted the court to modify the [eyewitness identification] instruction, he should have requested it. The trial court has no sua sponte duty to do so"].) The People argue that forfeiture is especially appropriate where, as here, inclusion of the certainty factor might have been beneficial to the defendant because the evidence "involved many identifications, . . . some [of which were] uncertain," and "[d]efendant would surely want the jury to consider how *uncertain* some of the identifications were." (*Id.* at p. 462.) Hall says his claim is not forfeited because the certainty factor violated his rights to due process and therefore affected his "substantial rights" within the meaning of Penal Code section 1259. (See *People v. Anderson* (2007) 152 Cal.App.4th 919, 927 ["Failure to object to instructional error forfeits the issue on appeal unless the error affects defendant's substantial rights"].)

The People's argument is well taken. Our Supreme Court has held that this is precisely the type of challenge that can be forfeited if not raised during trial, and while none of the witnesses who identified Hall were asked whether they were certain about the identification or volunteered that they were, two of them expressed a degree of uncertainty. But more fundamentally, Hall's argument for avoiding forfeiture fails for the same reason his challenge fails on the merits—his substantial rights weren't affected because the instruction doesn't violate due process. While this appeal was pending, our

7

Supreme Court decided *Lemcke*, in which it concluded CALCRIM No. 315's certainty factor does not violate due process even though empirical research shows that confidence in a witness identification is generally not a reliable indicator of accuracy. (*Lemcke*, *supra*, 11 Cal.5th at p. 644.) The court based its decision on a number of considerations, including that the factor does not equate certainty with accuracy and that it is just one of several other factors for evaluating the credibility of a witness identification. (*Id.* at p. 657.) "[W]e find nothing in CALCRIM No. 315's instruction on witness certainty that operates to 'lower the prosecution's burden of proof.' . . . [T]he instruction does not direct the jury that 'certainty equals accuracy.' [Citation.] Nor does the instruction state that the jury must presume an identification is accurate if the eyewitness has expressed certainty. [Citation.] Instead, the instruction merely lists the witness's level of certainty at the time of identification as one of 15 different factors that the jury should consider when evaluating the credibility and accuracy of eyewitness testimony. The instruction leaves the jury to decide whether the witness expressed a credible claim of certainty and what weight, if any, should be placed on that certainty in relation to the numerous other factors listed in CALCRIM No. 315. Indeed, even [the defendant] acknowledges that, on its face, the instruction is 'superficially neutral.'"[3] (*Ibid.*)

---

[3] Despite finding no due process violation, the court acknowledged the instruction's potential to mislead jurors about the relationship between certainty and accuracy and therefore used its supervisory powers to direct "trial courts to omit the certainty factor from CALCRIM No. 315 until the Judicial Council has the opportunity to consider how the language might be better worded to minimize juror confusion on this point." (*Lemcke*, *supra*, 11 Cal.5th at p. 669.)

The court also noted that Lemcke had the opportunity to (and did) present expert evidence on the reliability of eyewitness identification, and it also noted that the jury received other instructions tending to mitigate any correlation CALCRIM No. 315 might suggest between certainty and accuracy. Specifically, the trial court had instructed the jury that "'[p]eople sometimes honestly . . . make mistakes about what they remember,'" and that they were responsible for "'judg[ing] the credibility or believability of the witnesses.'" (*Lemcke*, *supra*, 11 Cal.5th at p. 658.) Additionally, CALCRIM No. 315 itself emphasizes that "[t]he People have the burden of proving beyond a reasonable doubt that it was the defendant who committed the crime" and if they "have not met this burden, you must find the defendant not guilty." (*Lemcke*, at p. 658.) Based on all of these considerations, the court concluded that "listing the witness's level of certainty as one of [several] factors the jury should consider when evaluating an eyewitness identification did not render [Lemcke's] trial fundamentally unfair or otherwise amount to a due process violation." (*Id.* at p. 661.)

*Lemcke*'s holding applies squarely to this case. During Hall's trial, the judge gave the jury the same additional instructions on witness testimony and the prosecution's burden of proof that were given in *Lemcke*, and there was nothing to stop Hall from presenting expert evidence on eyewitness identification. We therefore reject his claim of instructional error.

But even if it had been error to give the certainty factor, we see no prejudice resulting from the instruction. First of all, as noted above, none of the witnesses said they

9

were certain about their identifications but two did express a degree of certainty when selecting Hall from the photographic lineup. One said Hall "might have" been one of the robbers and the other said Hall "looked familiar." Thus, when it came to those two witnesses, telling the jury to consider how certain the witnesses were when they made their identifications could only benefit Hall. Second, and more importantly, the identifications were not the only—or even strongest—evidence connecting Hall to the robberies. Hall's name was mentioned multiple times in the recording recovered from the tablet, and the police caught him trying to run from the truck used in the robberies while carrying one of the stolen items. Given the compelling evidence of guilt independent of the identifications, we conclude "[i]t is not reasonably probable [Hall] would have obtained a more favorable result had the trial court deleted the certainty factor." (*Sanchez*, *supra*, 63 Cal.4th at p. 463.)

## III

## DISPOSITION

We affirm the judgment.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

SLOUGH
J.

We concur:

McKINSTER
Acting P. J.

MENETREZ
J.

10