Filed 12/20/22  P. v. Stewart CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G060586 |
| v. | (Super. Ct. No. 19WF1239) |
| LOGAN EARL STEWART, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a judgment of the Superior Court of Orange County, Scott A. Steiner, Judge.  Reversed and remanded for resentencing.

Paul Stubb, Jr., under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Arlene A. Sevidal and Susan Elizabeth Miller, Deputy Attorneys General, for Plaintiff and Respondent.

\*       \*       \*

A jury convicted Logan Earl Stewart of two counts of assault with a deadly weapon (Pen. Code, § 245, subd. (a)(1)) and one count of felony possession of metal knuckles (Pen. Code, § 21810). The trial court sentenced Stewart to a total prison term of 3 years 8 months. The sentence consisted of the middle term of three years on one count of assault with a deadly weapon, a concurrent middle term of three years on the other count of assault with a deadly weapon, and a consecutive term of eight months for possession of the metal knuckles.

Stewart contends the matter must be remanded for resentencing in accordance with Senate Bill No. 567 (2021-2022 Reg. Sess.) (Senate Bill No. 567) which, as relevant here, added subdivision (b)(6) to Penal Code section 1170, effective January 1, 2022. (Stats. 2021, ch. 731, § 1.3.) The Attorney General does not oppose remanding the matter for resentencing. We conclude resentencing is in order and remand for that purpose.

FACTS

On May 17, 2019, M.V. was driving her husband P.V. and three children in their van to San Diego to visit family. As M.V. was merging onto a freeway onramp, a Toyota being driven by Stewart sped up and cut her off, causing M.V. to slam on her brakes. As Stewart sped past the van, he and his passengers gave M.V. the "middle finger" and yelled profanity.

Because M.V. did not feel safe, she exited the freeway and drove to a nearby, well-lit parking lot behind a hospital. Stewart followed her. He pulled his Toyota up next to the van. Stewart and his passenger, Sean Garza, got out of the car, walked up to the van, and while banging their fists on M.V.'s window, continually yelled "fuck you, chink" and "fuck you, gook."

P.V. and his son got out of the van. Stewart and Garza taunted P.V. by yelling profanities and racial slurs. P.V. did not take the bait. Garza took a swing at him

2

and P.V. tackled Garza. Stewart yelled more profanities and racial slurs. P.V., his son, Stewart, and Garza began shoving and wrestling with each other.

P.V's older daughter jumped out of the van "after she saw her brother and her dad . . . being attacked." P.V., his son and older daughter, Stewart, and Garza all ended up on the ground. M.V. then exited the van.

Stewart punched the oldest daughter in the body and face. While P.V. was struggling on the ground with Garza, Stewart got back into the Toyota. Garza joined Stewart in the car. Stewart made a U-turn, pointed his car at the van, and drove toward it at an accelerating speed. P.V. was standing by the van and the older daughter was standing near the driver's side door. P.V. dodged Stewart's car. Stewart then swerved his car toward the driver's side of the van. The older daughter avoided injury by diving into the van from the driver's side. Stewart's car struck the driver's side door but did not hit the older daughter or P.V.

The youngest child never left the van and called 911 and stated, "He almost killed us." Stewart "peeled out of the parking lot" before police arrived.

Stewart testified at trial. He denied trying to hit the van or the people in the van but admitted he had texted a friend, "I hit the family with my car as they were getting in the van." He claimed that was an exaggeration. He also admitted he had texted his friend, "I need help. I beat some nip family and Korean fucks up last night. They hurt [Garza] pretty bad. Then I hit them w[ith] my car so I parked my car in FV. I need help." Stewart testified that when he texted he had hit them with his car, he meant he hit the van. He also admitted he texted another friend, "Jen, I need help. Hid my car last night. Ran people over. Call me." Stewart claimed that text message was an "an exaggeration trying to get help."

3

## VERDICT AND SENTENCING

The jury returned verdicts of guilty for two counts (counts 1 and 2) of assault with a deadly weapon, that being a motor vehicle (Pen. Code, § 254, subd. (a)(1)) and one count (count 3) of felony possession of metal knuckles (Pen. Code, § 21810).

Before sentencing, Stewart wrote and sent to the court a letter describing his traumatic childhood and drug use, explaining how he was reforming himself, and requesting placement in a residential treatment facility.  At the sentencing hearing, the trial court, after announcing it had computed Stewart's "maximum exposure" to be 5 years 8 months in prison, stated it had read the letter "in its entirety."  The court also stated it had received "correspondence from people in the defendant's life" which discussed Stewart's life history and the progress he appeared to have made "particularly with respect to some of the hateful language that was used in this case."

The prosecution requested that the trial court sentence Stewart to the upper term of four years on count 1 based on the following aggravating factors in aggravation: (1) "there was a serious threat of great bodily harm to multiple victims," (2) Stewart was armed with a deadly weapon (his car), (3) several victims were minors and therefore particularly vulnerable, (4) Stewart acted with hatred toward the victims due to their race, and (5) Stewart had an extensive prior criminal history, including several felony convictions including "a PC 32 for a homicide" and had served three prior prison sentences.  The prosecutor also argued the facts of the current case belied the assertions in the letters that Stewart had made progress in moving beyond his "hateful past."

Stewart's counsel requested that Stewart be granted probation and placed in a drug rehabilitation program.  Counsel stated that Stewart was 44 years old, had children, and was in the process of reforming himself, which included removing his white supremacist tattoos.  Counsel argued that, while Stewart's behavior in the current case was "stupid and dangerous," it appeared to have been the result of Stewart's drug

4

problem and therefore sending Stewart back to prison was "just gonna put him back into that atmosphere he's been trying to avoid . . . ."

After hearing from counsel, the trial court announced it had read Stewart's letter three times and accepted what Stewart had written. The court said the letter reminded it of the importance of a stable upbringing and had "left [the court] feeling down." The court stated: "I feel bad for you, what you saw as a kid, what you were brought up around. The fact that you have made strides to try to address it seem to be the case." But the court recognized it had to balance the issues raised by the letter against the nature and severity of the crimes, their impact on the victims, and Stewart's criminal history. The court characterized Stewart's current crimes as "stupid" and "dangerous" and considered the facts Stewart was "no stranger to the system" and his criminal history was "escalating." The court found a reasonable inference was that Stewart was "high" at the time of the crimes. The court also found the victims to be credible and considered they had been "subjected to this terrifying experience" while merely driving in traffic.

In conclusion, the trial court stated that after considering the factors in aggravation and the factors in mitigation it had decided to deny probation and sentence Stewart to the middle term of three years on count 1, a concurrent middle term of three years on count 2, and a consecutive one-third the middle term of eight months on count 3, for a total sentence of 3 years 8 months.

## DISCUSSION

### I. SENATE BILL NO. 567 AMENDMENTS TO SECTION 1170

Stewart contends the matter must be remanded for resentencing in accordance with Penal Code section 1170, subdivision (b)(6) (section 1170(b)(6)), which became effective on January 1, 2022, after he was sentenced. When Stewart was sentenced, section 1170, subdivision (b), gave the trial court discretion to choose whether to impose the lower, middle, or upper prison term in the interest of justice. Senate Bill

5

No. 567 amended section 1170, effective January 1, 2022. (Stats. 2021, ch. 731, § 1.3.)[1] Senate Bill No. 567 added subdivision (b)(6) to section 1170 to require the trial court to select the low term if the defendant "has experienced psychological, physical, and childhood trauma," including "abuse, neglect, exploitation or sexual violence," that was a contributing factor in the commission of the offense, "unless the court finds that the aggravating circumstances outweigh the mitigating circumstances [so] that imposition of the lower term would be contrary to the interests of justice." (§ 1170(b)(6)(A).)

Senate Bill No. 567's amendments to section 1170, subdivision (b) apply retroactively to this case as "an ameliorative change in the law applicable to all nonfinal convictions on appeal." (*People v. Superior Court* (*Lara*) (2018) 4 Cal.5th 299, 307, citing *In re Estrada* (1965) 63 Cal.2d 740, 745; *People v. Salazar* (2022) 80 Cal.App.5th 453, 462; *People v. Banner* (2022) 77 Cal.App.5th 226, 240.)

## II. REMAND FOR RESENTENCING IS WARRANTED

Before sentencing Stewart, the trial court read and considered his letter, according to which he had experienced psychological, physical, or childhood trauma. But Stewart was sentenced before the effective date of the amendments to section 1170, subdivision (b). The court did not have the benefit of section 1170(b)(6) and therefore did not conduct the analysis required by that section. Rather than starting with the lower

---

[1] Three bills amending section 1170 were enacted and signed into law on the same date during the 2021-2022 legislative term: Assembly Bill No. 124 (2021-2022 Reg. Sess.) (Stats. 2021, ch. 695, § 5), Senate Bill No. 567, and Assembly Bill No. 1540 (2021-2022 Reg. Sess.) (Stats. 2021, ch. 719, § 2). Senate Bill No. 567 takes precedence over the other two because it bears the highest chapter number and was enacted last. (Gov. Code, § 9605, subd. (b); *In re Thierry S.* (1977) 19 Cal.3d 727, 738-739.) Senate Bill No. 567 states that if all three bills amending section 1170 are enacted and become effective on or before January 1, 2022 and Senate Bill No. 567 is enacted last, then section 1.3 of that bill, which incorporates the amendments proposed by Senate Bill No. 567, Assembly Bill No. 124, and Assembly Bill No. 1540, shall become operative. (Stats. 2021, ch. 731, § 3.)

term, the trial court balanced the aggravating circumstances against the mitigating circumstances and imposed the middle term for count 1.

To determine whether a remand is required for resentencing in accordance with section 1170(b)(6), we apply the standard set forth in *People v. Gutierrez* (2014) 58 Cal.4th 1354. Under *Gutierrez*: "'Defendants are entitled to sentencing decisions made in the exercise of the "informed discretion" of the sentencing court. [Citations.] A court which is unaware of the scope of its discretionary powers can no more exercise that "informed discretion" than one whose sentence is or may have been based on misinformation regarding a material aspect of a defendant's record.' [Citation.] In such circumstances, we have held that the appropriate remedy is to remand for resentencing unless the record 'clearly indicate[s]' that the trial court would have reached the same conclusion 'even if it had been aware that it had such discretion.'" (*People v. Gutierrez, supra*, 58 Cal.4th at p. 1391; see *People v. Salazar, supra*, 80 Cal.App.5th at p. 462.)

The record in this case does not clearly indicate the trial court would have reached the same sentencing decision if it had sentenced Stewart in accordance with section 1170(b)(6). Stewart's letter to the court, which the trial court accepted as truthful, showed that Stewart had experienced psychological, physical, and childhood trauma that might have been a contributing factor in the commission of the offenses. The court read the letter three times, and it left the court "feeling down" because "it just reminded me about how brutal life can be sometimes for children." Without a stable upbringing, the court opined, "we end up in a situation like the one you're in."

Stewart argues we should remand for resentencing with directions to the trial court to resentence him to the low term. The Attorney General argues it is up to the trial court to undertake the appropriate analysis under section 1170(b)(6) and decide whether to impose the low term. We agree with the Attorney General. On remand both the prosecution and Stewart shall have the opportunity to present additional evidence and

7

information to permit the trial court to make a sentencing decision under section 1170(b)(6).

## DISPOSITION

The matter is remanded to the trial court for resentencing in accordance with section 1170(b)(6).  In all other respects, the judgment is affirmed.

SANCHEZ, J.

WE CONCUR:

O'LEARY, P. J.

BEDSWORTH, J.

8