Filed 3/22/24  In re S.G. CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re S.G., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>　　　Plaintiff and Respondent,<br><br>　　　　　　v.<br><br>S.G.,<br><br>　　　Defendant and Appellant. | F085595<br><br>(Super. Ct. No. JW090568-02)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Kern County.  Wendy L. Avila, Judge.

Kendall Dawson Wasley, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Louis M. Vasquez and Jesica Y. Gonzalez, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

S.G., then a minor, was tried and convicted as an adult. His convictions and sentence were affirmed on appeal, and the matter was remanded to the trial court for the limited purpose of permitting him to make a record of information relevant to his eventual youth offender parole hearing pursuant to *People v. Franklin* (2016) 63 Cal.4th 261 (*Franklin*). Following those proceedings, he again appealed. We conditionally reversed the conviction and sentence and remanded to the juvenile court with directions to conduct a juvenile transfer hearing pursuant to Welfare and Institutions Code[1] section 707. (*People v. Green* (Mar. 29, 2019, F075978) [nonpub. opn.] (*Green*).)[2] After conducting such hearing, the court granted the People's motion to transfer the matter back to adult court.

In this appeal, minor contends substantial evidence does not support the juvenile court's transfer order. We requested supplemental briefing on the effect, if any, of Senate Bill No. 135 (2023–2024 Reg. Sess.) (Senate Bill No. 135) and Senate Bill No. 545 (2023–2024 Reg. Sess.) (Senate Bill No. 545) on the issues raised in the instant appeal. We also invited the parties to provide further briefing on the issues of retroactivity and remedy as they pertain to the effect of Assembly Bill No. 2361 (2021–2022 Reg. Sess.) (Assembly Bill No. 2361) on the issues raised in this appeal. The parties agree, as do we, that Assembly Bill No. 2361, Senate Bill No. 135, and Senate Bill No. 545 apply retroactively to minor's nonfinal judgment pursuant to *In re Estrada* (1965) 63 Cal.2d

---

[1] Undesignated statutory references are to the Welfare and Institutions Code.

[2] We grant the People's unopposed request for judicial notice of the prior opinion in *Green*, *supra*, F075978. The prior opinion is considered for the procedural history of the case. We acknowledge minor's objection on relevance grounds to our taking judicial notice of the statement of facts contained in that opinion. We dispense with a statement of facts and do not rely on the prior opinion's recitation of facts in reaching our disposition.

740 (*Estrada*).  Additionally, the People state they have no objection to remand for the juvenile court to reconsider transfer in light of these legislative changes.

In light of the parties' positions on retroactivity and remedy, we reverse the order transferring minor to a court of criminal jurisdiction and remand for further proceedings.

## PROCEDURAL HISTORY

"[Minor] was convicted [in adult criminal court] of premeditated attempted murder of a peace officer engaged in the lawful performance of his duties (Pen. Code, §§ 187, subd. (a), 189, 664, subd. (e); count one), assault with a semiautomatic firearm on a peace officer ([Pen. Code,] § 245, subd. (d)(2); count two), attempted second degree robbery ([Pen. Code,] §§ 212.5, subd. (c), 664; count three), conspiracy to commit second degree robbery ([Pen. Code,] § 182, subd. (a)(1); count four), possession of a loaded firearm in public by a gang member (former [Pen. Code,] § 12031, subd. (a)(2)(C), now [Pen. Code,] § 25850, subd. (c)(3); count five), and active participation in a criminal street gang ([Pen. Code,] § 186.22, subd. (a); count seven).  As to counts one through four, the jury found the offense was committed for the benefit of or in association with a criminal street gang ([Pen. Code,] § 186.22, subd. (b)), and that [minor] personally and intentionally discharged a firearm, causing great bodily injury ([Pen. Code,] § 12022.53, subd. (d)).  As to counts five and seven, the jury found [minor] personally used a firearm, and personally inflicted great bodily injury, in commission of the offense.  ([Pen. Code,] §§ 12022.5, subd. (a), 12022.7, subd. (a).)  [Minor] was sentenced to a total unstayed term of eight years plus 65 years to life in prison.

"On [minor's] first appeal, we affirmed the judgment in its entirety.  The California Supreme Court granted review and remanded the case to us with directions to vacate our decision and to reconsider the cause in light of [*Franklin*, *supra*,] 63 Cal.4th[ at pages] 283–284 . . . .  We again affirmed the judgment—expressly including the sentence—but remanded the matter to the trial court for a determination whether [minor] was afforded sufficient opportunity to make a record of information relevant to his

3.

eventual youth offender parole hearing and, if not, to afford him that opportunity. The opinion was filed October 31, 2016.

"On November 8, 2016, voters enacted Proposition 57, the 'Public Safety and Rehabilitation Act of 2016' (Proposition 57). It went into effect the next day. (Cal. Const., art. II, § 10, former subd. (a).) Insofar as is pertinent, Proposition 57 eliminated the People's ability to initiate criminal cases against juvenile offenders anywhere but in juvenile court. Instead, it requires prosecutors to commence such actions in juvenile court. If a prosecutor wishes to try a juvenile as an adult, the juvenile court must conduct a fitness or transfer hearing to determine whether the matter should remain in juvenile court or be transferred to adult court. Only if the juvenile court transfers the matter to criminal (adult) court can the juvenile be tried and sentenced as an adult. Proposition 57 also removed the presumption of unfitness that previously attached to the alleged commission of certain offenses. [Citations.]

"Remittitur issued with respect to our second opinion on January 3, 2017. On March 2, 2017, the trial court set the matter for hearing in accordance with the remittitur. On March 13, 2017, [D.H.], [minor's] codefendant, acting in pro[.] per., filed a motion to have his case remanded to juvenile court pursuant to Proposition 57. The People responded that (1) the subject of the motion fell outside the scope of the hearing permitted by this court's remand, and (2) Proposition 57 did not apply retroactively in any event.

"On April 17, 2017, [minor] appeared with the attorney who had been his trial counsel (and who, on Jan. 5, 2017, had been notified by mail of the filing of the remittitur) and orally joined in [D.H.]'s Proposition 57 motion. As both defense counsel asked for a continuance, the matter was set for May 22, 2017.

"On May 22, 2017, the trial court ruled it had no jurisdiction to entertain the Proposition 57 motion, and denied it on that basis. The court remarked that the motion would be better heard by the court that had jurisdiction, namely the Court of Appeal.

4.

Because defense counsel was not prepared to proceed with the *Franklin* hearing, the court continued the matter to June 21, 2017, but warned that would be the last date the matter would be heard.

"On June 21, 2017, the court found [minor] was not provided an adequate opportunity previously to present any evidence or information he wished to memorialize for purposes of consideration by parole boards in the future. Accordingly, it stated it would provide such opportunity at that time. It denied defense counsel's request for a further continuance and, when counsel was unable to present any evidence or information to memorialize for further proceedings, remanded [minor] so he could resume serving his previously imposed sentence." (*Green, supra,* F075978, fn. omitted.)

Minor again appealed. During the pendency of his appeal, Senate Bill No. 620 (2017–2018 Reg. Sess.) (Stats. 2017, ch. 682, §§ 1, 2, eff. Jan. 1, 2018) amended Penal Code sections 12022.5, subdivision (c), and 12022.53, subdivision (h), to permit trial courts to strike or dismiss, pursuant to section 1385, firearm enhancements imposed pursuant to those sections. Also during the pendency of his appeal, the California Supreme Court held that "Proposition 57 applies to all juveniles charged directly in adult court whose judgment was not final at the time it was enacted." (*People v. Superior Court (Lara)* (2018) 4 Cal.5th 299, 304 (*Lara*).)

On minor's second appeal, we conditionally reversed the convictions and sentence and remanded to the juvenile court with directions to conduct a juvenile transfer hearing. (§ 707.) If, after such hearing, the juvenile court found it would not have transferred minor to adult criminal court, the juvenile court was directed to treat minor's convictions as juvenile adjudications; to exercise its discretion under Penal Code section 12022.53, subdivision (h), as amended by Senate Bill No. 620 (2017–2018 Reg. Sess.); and to impose an appropriate disposition. If, after the juvenile transfer hearing, the court determined it would have transferred minor to adult criminal court, then minor's convictions and sentence were to be reinstated. (*Green, supra,* F075978.)

5.

Following remand, the Kern County District Attorney filed a juvenile petition pursuant to section 602, alleging the same counts and allegations of which minor previously was convicted. The District Attorney also filed a motion to transfer the matter to adult criminal court. Following preparation of a probation report and the filing of further briefing, the matter was heard.

The court ruled on the motion on December 19, 2022. The court noted that the standard of proof on the motion was then-currently a preponderance of the evidence. However, the court noted that, after January 1, 2023, amendments to the applicable law effectuated by Assembly Bill No. 2361 would require "a showing by clear and convincing evidence as to each of the [relevant] criterion." The court determined that, pursuant to section 707, subdivision (a)(3), it was required to weigh five factors in reaching its decision: the degree of criminal sophistication exhibited by minor, whether minor could be rehabilitated before the juvenile court loses jurisdiction, the minor's previous delinquent history, the success of any prior attempts at rehabilitation, and the circumstances and gravity of the offense. The court stated it had independently evaluated whether each criterion weighed in favor of transfer, then proceeded to state its factual findings with respect to each criterion. The court found by clear and convincing evidence that minor committed the offense with criminal sophistication, and that this factor weighed in favor of transfer to adult criminal court. The court also found, by clear and convincing evidence, that minor's prior delinquent history, the success of prior attempts at rehabilitation, and the circumstances and gravity of the offense weighed in favor of transfer.

The court also determined that its jurisdiction over minor had expired when minor reached the age of 25,[3] and he therefore was "beyond the reach of any rehabilitative efforts of the juvenile justice system." The court therefore determined that, under

---

[3] Minor was 31 years old on the date of the transfer hearing.

juvenile court jurisdiction, minor would be released into the community without supervision or services. Meanwhile, other facts regarding minor's rehabilitative progress evidenced he required further rehabilitative efforts. Thus, the court determined that minor's ability to be rehabilitated prior to the expiration of juvenile court jurisdiction weighed in favor of transfer to adult criminal court.

Considering the "totality of the circumstances," the court determined the People had met their burden to show by clear and convincing evidence that minor should be transferred to adult criminal court. Accordingly, the court granted the People's transfer motion.

## DISCUSSION

### I.     Applicable Law

Enacted by voters in November 2016, "Proposition 57 prohibits prosecutors from charging juveniles with crimes directly in adult court. Instead, they must commence the action in juvenile court. If the prosecution wishes to try the juvenile as an adult, the juvenile court must conduct . . . a 'transfer hearing' to determine whether the matter should remain in juvenile court or be transferred to adult court. Only if the juvenile court transfers the matter to adult court can the juvenile be tried and sentenced as an adult." (*Lara*, *supra*, 4 Cal.5th at p. 303.)

The decision whether to transfer a minor to a court of adult criminal jurisdiction is governed by section 707, which has been amended in relevant part since the juvenile court conducted the transfer hearing in the instant case. At the time of the transfer hearing, "the governing law and the corresponding Rule of Court required the petitioner to establish by *a preponderance of the evidence* that 'the minor should be transferred to a court of criminal jurisdiction.' " (*In re S.S.* (2023) 89 Cal.App.5th 1277, 1284, italics added.) "In making that decision the juvenile court was required to consider five criteria [set forth in section 707, subdivision (a)(3), subparagraphs (A) to (E)]: (1) the degree of criminal sophistication, (2) whether the minor . . . can be rehabilitated prior to the

7.

expiration of the juvenile court's jurisdiction, (3) the minor's previous delinquent history, (4) the success of previous attempts by the juvenile court to rehabilitate the minor and (5) the circumstances and gravity of the offense alleged in the petition to have been committed by the minor." (*In re E.P.* (2023) 89 Cal.App.5th 409, 415.)

Effective January 1, 2023, Assembly Bill No. 2361 amended section 707, subdivision (a)(3) to provide in relevant part as follows: "In order to find that the minor should be transferred to a court of criminal jurisdiction, the court shall find by *clear and convincing evidence* that the minor is not amenable to rehabilitation while under the jurisdiction of the juvenile court. In making its decision, the court shall consider the criteria specified in subparagraphs (A) to (E), inclusive [of section 707, subdivision (a)(3)]. If the court orders a transfer of jurisdiction, the court shall recite the basis for its decision in an order entered upon the minutes, *which shall include the reasons supporting the court's finding that the minor is not amenable to rehabilitation while under the jurisdiction of the juvenile court*." (Stats. 2022, ch. 330, § 1, italics added; see § 707, subd. (a)(3); see also *In re E.P.*, *supra*, 89 Cal.App.5th at pp. 415–416.)

Thus, Assembly Bill No. 2361 raised the standard of proof to "clear and convincing evidence." (Stats. 2022, ch. 330, § 1; see § 707, subd. (a)(3); see also *In re S.S.*, *supra*, 89 Cal.App.5th at p. 1286.) Furthermore, following Assembly Bill No. 2361, the minor's amenability to rehabilitation is "the ultimate question for the court to decide." (*In re E.P.*, *supra*, 89 Cal.App.5th at p. 416.) "Nevertheless, in deciding that question, the amendment requires the court to consider the same five factors listed in the previous version." (*Ibid.*) Now, however, "[t]he analysis of the five criteria set forth in the statute should be focused through the lens of amenability to rehabilitation." (*In re S.S.*, *supra*, 89 Cal.App.5th at p. 1288.)

Effective January 1, 2024, Senate Bill No. 545 further amended section 707, subdivision (a)(3)(A) through (E) to require the court to consider relevant factors that previously were discretionary. Senate Bill No. 545 also amended the factors the court

must weigh in evaluating the degree of criminal sophistication exhibited by the minor, to include "the effect of the minor's family and community environment; the existence of childhood trauma; the minor's involvement in the child welfare or foster care system; and the status of the minor as a victim of human trafficking, sexual abuse, or sexual battery." (§ 707, subd. (a)(3)(A)(ii).)

Also relevant here, effective September 13, 2023, Senate Bill No. 135 added a provision to section 607 to give the juvenile court discretion to "retain jurisdiction over a person who is 25 years of age or older for a period not to exceed two years from the date of disposition" if the person is found to have committed "an offense listed in subdivision (b) of section 707." (§ 607, subd. (d).)

We review a juvenile court's ruling on a motion to transfer a minor to criminal court for abuse of discretion. (*J.N. v. Superior Court* (2018) 23 Cal.App.5th 706, 714–715.)

## II. Retroactivity

"No part of the Penal Code 'is retroactive, unless expressly so declared.' " (*People v. Buycks* (2018) 5 Cal.5th 857, 880.) However, a "limited rule of retroactivity" applies to newly enacted criminal statutes that are intended to ameliorate criminal punishment. (*Buycks*, at p. 881 [discussing *Estrada*, *supra*, 63 Cal.2d 740].) "The *Estrada* rule rests on the presumption that, in the absence of a savings clause providing only prospective relief or other clear intention concerning any retroactive effect, 'a legislative body ordinarily intends for ameliorative changes to the criminal law to extend as broadly as possible, distinguishing only as necessary between sentences that are final and sentences that are not.' " (*Buycks*, at p. 881.)

The People concede that Assembly Bill No. 2361 applies retroactively to the instant case pursuant to *Estrada*, *supra*, 63 Cal.2d 740. We accept the People's concession. (*In re S.S.*, *supra*, 89 Cal.App.5th at pp. 1284, 1288–1289; accord, *Lara*, *supra*, 4 Cal.5th at p. 303.)

Likewise, the People concede that Senate Bill No. 545 applies retroactively to minor's nonfinal judgment pursuant to *Estrada*, *supra*, 63 Cal.2d 740. Like the provisions of Assembly Bill No. 2361, the provisions of Senate Bill No. 545 make it more difficult to transfer juveniles from juvenile court. "The possibility of being treated as a juvenile in juvenile court—where rehabilitation is the goal—rather than being tried and sentenced as an adult can result in dramatically different and more lenient treatment." (*Lara*, *supra*, 4 Cal.5th at p. 303.) Our Supreme Court has determined that an increased possibility of being retained under juvenile court – as opposed to criminal court – jurisdiction warrants application of the *Estrada* inference of retroactivity. (*Ibid*.) Neither party directs us to any part of the statutory text or its history that would rebut this inference. Accordingly, we accept the People's concession that Senate Bill No. 545 applies retroactively to nonfinal judgments.

Finally, the parties agree, as do we, that the relevant provision of Senate Bill No. 135 is expressly retroactive. (§ 607, subds. (d), (m).)

## III. Remedy

Under the California Constitution, "[n]o judgment shall be set aside, or new trial granted, in any cause, on the ground of misdirection of the jury, or of the improper admission or rejection of evidence, or for any error as to any matter of pleading, or for any error as to any matter of procedure, unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice." (Cal. Const., art. VI, § 13.) "California law generally interprets its constitutional miscarriage of justice requirement 'as permitting reversal only if the reviewing court finds it reasonably probable the result would have been more favorable to the appealing party but for the error.' " (*In re K.H.* (2022) 84 Cal.App.5th 566, 607, quoting *In re Celine R.* (2003) 31 Cal.4th 45, 60 [citing *People v. Watson* (1956) 46 Cal.2d 818, 836 (*Watson*)].)

10.

In *In re S.S.*, the Court of Appeal determined that Assembly Bill No. 2361 applied retroactively to the minor's case. (*In re S.S.*, *supra*, 89 Cal.App.5th at p. 1288.) The court then proceeded to determine whether a " 'miscarriage of justice' " had resulted under the *Watson* standard. (*Id.* at p. 1289.) Ultimately, the court concluded it was reasonably probable a more favorable result would have been reached under the then-current version of section 707. (*In re S.S.*, at p. 1289.) Accordingly, the order transferring the minor to a court of criminal jurisdiction was reversed and the matter remanded to the trial court to conduct a new transfer hearing pursuant to current law. (*Id.* at p. 1294.)

More recently, our Supreme Court has clarified the standard to be applied when a trial court has failed to exercise its discretionary sentencing authority. In *In re F.M.* (2023) 14 Cal.5th 701, 704–705, the high court addressed the juvenile court's failure to classify a wobbler offense as a misdemeanor or a felony, as required under section 702. The court held this type of error was distinct from those to which the *Watson* standard applies. (*In re F.M.*, at p. 714.) The court clarified that the *Watson* standard is appropriate in circumstances where the trial court failed to state its reasoning, but not where the court was unaware of the "decision [it was] tasked with making" (*id.* at p. 715), or "the extent of [its] lawful authority in [a] particular context" (*id.* at p. 716). The court further opined, "[T]here is a practical difference in assessing the effect of an error when the court has not articulated whether a discretionary decision was made in the first place, as compared to when there were errors in a decision the court actually rendered. In the latter scenario, we may decline to remand because the record reflects aggravating circumstances so numerous that it would be 'inconceivable' that the trial court would 'impose a different sentence' absent the error. [Citation.] By contrast, where the concern is that no discretionary decision was made, attempting to discern the likelihood of a 'more favorable' decision is a more speculative inquiry. Instead of hypothesizing what decision the juvenile court would have made if it had understood the extent of its lawful

11.

authority, reviewing courts have consistently held that remand is appropriate in these circumstances." (*Ibid.*)

The high court also recently expounded upon this standard in *People v. Salazar* (2023) 15 Cal.5th 416 (*Salazar*). There, the defendant was sentenced to a middle-term sentence. (*Id.* at p. 419.) However, during the pendency of the defendant's appeal, the law was amended to create a presumption of lower-term sentencing in certain circumstances. (*Ibid.*) Because the sentencing court was unaware of the full scope of its discretion at the time of sentencing, the high court held " 'the appropriate remedy is to remand for resentencing unless the record "clearly indicate[s]" that the trial court would have reached the same conclusion "even if it had been aware that it had such discretion." ' " (*Ibid.*, quoting *People v. Gutierrez* (2014) 58 Cal.4th 1354, 1391.) Relying on *In re F.M.*, the high court rejected the Court of Appeal's determination that *Watson* was the applicable standard. (*Salazar*, at p. 425.) The high court explained, "Where, as here, the sentencing court was not aware of the scope of its discretionary powers at sentencing, *Watson* does not properly take into consideration the 'more speculative inquiry' of what choice the court is likely to make in the first instance. [Citation.] Indeed, when the applicable law governing the defendant's sentence has substantively changed after sentencing, it is almost always speculative for a reviewing court to say what the sentencing court would have done if it had known the scope of its discretionary powers at the time of sentencing." (*Ibid*.)

In his initial briefing, minor argued reversal was required under either of the standards articulated above. The People did not address either standard, but rather argued the transfer order was supported by substantial evidence, even under the amended law. In supplemental briefing, the parties do not address either standard. Nonetheless, the People state they have "no objection to a remand for the trial court to reconsider the transfer ruling in light of these legislative changes."

We accept the People's concession that reversal and remand is an appropriate remedy.  The extent of the juvenile court's lawful authority has been substantively changed since it ruled on the transfer motion, and we decline to hypothesize as to the decision the juvenile court would have made had it been aware of the scope of its authority in the first instance.  (See *In re F.M.*, *supra*, 14 Cal.5th at p. 716.)  We agree that remand is appropriate for the court to consider the propriety of transfer to adult criminal court under the law currently in effect.

## **DISPOSITION**

The juvenile court's order granting the People's motion to transfer minor to adult criminal court is reversed.  The matter is remanded to the juvenile court with directions to conduct further proceedings consistent with this opinion and under the law, as amended.


DETJEN, J.

WE CONCUR:


POOCHIGIAN, Acting P. J.


FRANSON, J.


13.