Filed 11/24/25  P. v. Mai CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>NHAT DINH MAI,<br><br>    Defendant and Appellant. | H051930<br>(Santa Clara County<br>Super. Ct. No. CC247793) |

In 2002, 17-year-old defendant Nhat Dinh Mai stabbed a teenager. About one week later, Mai shot at three teenagers, killing one of them.  In 2003, Mai pleaded guilty to murder, two counts of attempted murder, and assault with a deadly weapon.  The trial court sentenced Mai to an aggregate term of 40 years to life in prison.

In 2023, Mai filed a petition under Penal Code[1] section 1170, subdivision (d) (section 1170(d)) seeking a recall of his sentence and resentencing (petition).  The trial court denied the petition on the ground that Mai had not shown his sentence is the functional equivalent of life without the possibility of parole (LWOP).

---

[1] All further unspecified statutory references are to the Penal Code.

On appeal, Mai contends the trial court erred because his 40-years-to-life sentence is "de facto" a "juvenile offender life without parole [] sentence" and he is entitled to relief under *People v. Heard* (2022) 83 Cal.App.5th 608 (*Heard*).[2]  Mai asks this court to reverse the denial of his petition and remand for recall and resentencing.

For the reasons explained below, we affirm the trial court's order denying Mai's petition.

## I.  FACTS AND PROCEDURAL BACKGROUND

A. *The Offenses*[3]

On April 29, 2002, Mai and his codefendant Nguyen Nguyen stabbed a fellow teenager with knives after announcing their Asian Warrior gang membership.[4]

About one week later (on the afternoon of May 7, 2002), Mai and Nguyen followed three teenagers as they drove away from a park in San Jose. Mai leaned out of a car (driven by Nguyen) and fired a gun, striking one of the three teens in the head and causing their vehicle to crash.  The police investigation revealed that the shooting was the culmination of a series of encounters between two groups of young people over the preceding weeks and that Mai and Nugyen had "volunteered to kill" the deceased victim.  The investigation also revealed that Mai fired 13 rounds during the shooting.

---

[2] The *Heard* court held that "denying juvenile offenders, who were sentenced to the functional equivalent of life without parole, the opportunity to petition for resentencing [under section 1170(d)(1)] violates the guarantee of equal protection."  (*Heard, supra,* 83 Cal.App.5th at p. 612.)

[3] Because the particulars of Mai's offenses are not germane to the claim raised in this appeal, we state the facts summarily.  Further, like the parties, we take the facts from the district attorney's opposition to Mai's petition, which stated the facts based on the preliminary hearing evidence.

[4] Like Mai (who was born in 1985), Nguyen was 17 years old at the time of the crimes.

B. *Charges, Plea, and Sentence*

By information, the Santa Clara County District Attorney charged Mai with first degree murder (§ 187) with an enhancement for personal discharge of a weapon causing death (§ 12022.53, subd. (d)), two counts of attempted premeditated murder (§§ 187, 664), each with an enhancement for personal discharge of a weapon (§ 12022.53, subd. (c)), shooting at an occupied vehicle (§ 246), and assault with a knife (§ 245, subd. (a)(1)) with an enhancement for personal infliction of great bodily injury (§ 12022.7, subd. (a)) (GBI enhancement). The information further alleged that Mai committed all the counts for the benefit of a criminal street gang (§ 186.22, subd. (b)) (gang enhancement).

In August 2003, pursuant to a negotiated plea agreement, Mai (then 18 years old) pleaded guilty to first degree murder, two counts of attempted premeditated murder, and assault with a knife. In addition, he admitted three firearm enhancements (§ 12022.53, subd. (b)), the GBI enhancement, and the gang enhancements.

In October 2003, the trial court sentenced Mai to a total term of 40 years to life in prison, comprising 25 years to life for first degree murder plus 10 years for the attached firearm enhancement, concurrent with life terms and firearm enhancements for the two attempted premeditated murders, and consecutive to a determinate term of five years (i.e., two years for assault with a knife consecutive to three years for the GBI enhancement).[5]

---

[5] In 2013, Mai filed a petition for a writ of habeas corpus in the trial court, alleging that his sentence violated the Eighth Amendment under *Miller v. Alabama* (2012) 567 U.S. 460 and *People v. Caballero* (2012) 55 Cal.4th 262 (*Caballero*). In December 2013, the court denied that petition.

C. *Proceedings on the Section 1170(d)(1) Petition*

In October 2023, Mai filed a petition under section 1170(d)(1) for recall and resentencing. Mai asserted that he was eligible to petition for such relief because he was under age 18 at the time of his crimes, he had been "sentenced to 35 years to life consecutive to 5 years, which is a *de facto* LWOP sentence," he had already served 20 years in prison, and "none of the disqualifying circumstances of section 1170, subdivision (d)(1)(B)" applied to his case. Mai relied on *Heard*, *supra*, 83 Cal.App.5th 608, to argue that "individuals sentenced to *de facto* LWOP as children are now eligible to petition under section 1170, subdivision (d)(1)." (Boldface omitted.) In support of his petition, Mai submitted a statement of his remorse (see § 1170(d)(2)) and evidence of his efforts toward rehabilitation, including laudatory statements and certificates from self-help and rehabilitation programs (see § 1170(d)(2)(D)). Mai asserted that he did " 'not have juvenile felony adjudications for assault or other felony crimes with a significant potential for personal harm to victims prior to the offense for which the sentence is being recalled' (§ 1170, subd. (d)(2)(B))."[6] Mai further noted that upon recall of his sentence, he would be entitled to the benefits of Proposition 57.[7]

---

[6] Mai acknowledged that in 2000, a juvenile court had sustained a felony charge against him for first degree burglary (§§ 459, 460, subd. (a)). Mai, however, argued that juvenile adjudication did not involve a "a crime 'with a significant potential for personal harm to victims.' "

[7] Proposition 57 (which took effect in 2016) provides that a juvenile may not be tried as an adult unless the juvenile court has conducted a transfer hearing and determined that the juvenile should be transferred from juvenile court to adult criminal court. (Welf. & Inst. Code, § 707, subd. (a)(1); see also *People v. Superior Court* (*Lara*) (2018) 4 Cal.5th 299, 303–304; *People v. Castillero* (2019) 33 Cal.App.5th 393, 398; *People v. Padilla* (2022) 13 Cal.5th 152, 158.)

The district attorney opposed Mai's petition. The district attorney asserted that *Heard* was wrongly decided but acknowledged that the trial court was bound by that decision. Additionally, the district attorney contended Mai had failed to meet his burden to show that his sentence was the functional equivalent of LWOP. The district attorney noted that "no case has ever concluded a similar sentence was the functional equivalent of LWOP" and argued, "Assuming no good time credits, which is not the law, [Mai] would be eligible for parole at age 57. With a life expectancy of 75 to 76, [Mai] has just shy of two decades to live out a meaningful life." (Fn. omitted.) The district attorney further asserted that Mai had failed to set forth the amount of conduct credits "he could earn[] or has earned" under various programs that may affect his minimum parole eligibility date.

On March 5, 2024, the trial court held a hearing on Mai's petition. During the parties' arguments, the court stated, "I agree 40 to life is a long time. But at 17 years of age, not considering credits or anything else, that's 57 years old. And I don't have anything before me to suggest that is the functional equivalent of a life sentence." The court ultimately denied the petition, concluding that Mai had not met his burden to show his sentence was the functional equivalent of a LWOP sentence. The court stated that its denial was "without prejudice, with leave to re-file if there is supplemental information that the defense thinks would change the [c]ourt's position."

## II. DISCUSSION

Mai contends the trial court erred by failing to consider whether his 40-years-to-life sentence is de facto LWOP. Mai further claims that his petition adequately demonstrated his entitlement to relief under section 1170(d)(1) and *Heard* precludes excluding de facto LWOP juvenile offenders from obtaining such relief. Mai argues that if the court had used the test set forth

5

in *People v. Contreras* (2018) 4 Cal.5th 349 (*Contreras*), it would have concluded that his "40 years to life sentence is the functional equivalent of an LWOP sentence."[8]  Mai asserts that "one must consider the difficulty of receiving a grant at a parole hearing" and "factor in the fact that people incarcerated in California age faster than non-incarcerated people."  Relying on *Heard*, *People v. Sorto* (2024) 104 Cal.App.5th 435 (*Sorto*), and *People v. Bagsby* (2024) 106 Cal.App.5th 1040 (*Bagsby*), Mai further contends that "a defendant's eligibility for a youth offender parole hearing [under section 3051] does not prevent a juvenile offender with LWOP or the functional equivalent of LWOP from seeking relief under [section 1170,] subdivision (d)(1)."  He similarly claims that his "opportunity to earn credits" should not be considered because it "is too speculative."

The Attorney General contends the trial court correctly denied Mai's petition because Mai "was not sentenced to the functional equivalent of LWOP."  The Attorney General asserts that Mai "will have at least two

---

[8] In *Contreras*, the California Supreme Court considered whether sentences of 50 years to life and 58 years to life, imposed on two 16-year-old juvenile nonhomicide offenders, violated the Eighth Amendment.  (*Contreras*, *supra*, 4 Cal.5th at p. 356.)  In concluding that those sentences were unconstitutional, our Supreme Court explained that the United States Supreme Court "did not define the maximum length of incarceration before parole eligibility that would be permissible in light of the concerns it set forth in [*Graham v. Florida* (2010) 560 U.S. 48].  But the high court made clear the nature of its concerns:  A lawful sentence must recognize 'a juvenile nonhomicide offender's capacity for change and limited moral culpability.' [Citation.]  A lawful sentence must offer 'hope of restoration' [citation], 'a chance to demonstrate maturity and reform' [citation], a 'chance for fulfillment outside prison walls,' and a 'chance for reconciliation with society' [citation].  A lawful sentence must offer 'the opportunity to achieve maturity of judgment and self-recognition of human worth and potential.' [Citation.]  A lawful sentence must offer the juvenile offender an 'incentive to become a responsible individual.' " (*Contreras*, *supra*, 4 Cal.5th at p. 367.)

parole hearings while in his forties and fifties"—the first in 2027, under the youth offender parole scheme (§ 3051, subd. (b)(3)), and the second in 2035, under the elderly parole program (§ 3055, subd. (a)). The Attorney General further asserts that regardless of these parole opportunities, Mai will be eligible for parole at age 57 (after serving 40 years of his aggregate sentence), which is "before the line established in *Contreras*." Additionally, the Attorney General notes that the reports on which Mai relies to show the low rate of grants of parole were not presented to the trial court and, regardless, case law "makes clear that a defendant must only be offered the *opportunity* for release, not a guarantee of release at a certain age." The Attorney General also observes that the *Contreras* court rejected reliance on the effects of incarceration on aging. Lastly, the Attorney General contends that Mai's citation to publications of the United States Sentencing Commission and out-of-state authority do not support his claim of error.

With permission from this court, the California District Attorneys Association and the Sacramento County District Attorney (amici) filed an amicus curiae brief in support of affirmance of the trial court's order. Amici contend, inter alia, that section 1170(d) "passes rational basis scrutiny. The statute was intended to provide a mechanism to convert some LWOP sentences for juvenile offenders to 'terms that include an opportunity for parole.' [Citation.] [Mai]'s sentence already provides numerous opportunities for youth offender parole, elder parole, and the opportunity to accrue good conduct credits. [Mai] therefore already received what the Legislature intended the statute to provide." Amici also contend that *Heard*, *Sorto*, and *Bagsby* were wrongly decided.

7

A. *Legal Principles*

Section 1170(d)(1)(A) provides: "When a defendant who was under 18 years of age at the time of the commission of the offense for which the defendant was sentenced to imprisonment for life without the possibility of parole has been incarcerated for at least 15 years, the defendant may submit to the sentencing court a petition for recall and resentencing."

Although section 1170(d)(1)(A) applies, by its terms, only to those juvenile offenders sentenced to "imprisonment for life without the possibility of parole," California Courts of Appeal have held that juvenile offenders who have been sentenced to the functional equivalent of LWOP are also entitled to relief under section 1170(d)(1)(A). (See *Heard*, *supra*, 83 Cal.App.5th at p. 633 [identifying no "rational basis for making juveniles sentenced to an explicitly designated life without parole term, but not juveniles sentenced to the functional equivalent of life without parole, eligible to petition for resentencing under section 1170, subdivision (d)(1)"]; *Sorto*, *supra*, 104 Cal.App.5th at p. 454 [agreeing with *Heard* that section 1170, subdivision (d) violates equal protection "by denying relief to juvenile offenders sentenced to functionally equivalent LWOP terms" and "that parole eligibility under section 3051 does not render an offender ineligible for [such] relief"]; *Bagsby*, *supra*, 106 Cal.App.5th at p. 1046 [reaffirming *Heard*].)

In the wake of *Heard*, Courts of Appeal have reached differing conclusions about whether a 50-years-to-life sentence is functionally equivalent to an LWOP sentence for purposes of equal protection analysis, and our Supreme Court has granted review of the issue. (Compare *People v. Munoz* (2025) 110 Cal.App.5th 499, 507–512, review granted June 25, 2025, S290828 [distinguishing *Heard* and holding that a 50-years-to-life sentence for a juvenile homicide offender is not the functional equivalent of LWOP],

8

*People v. Thompson* (2025) 112 Cal.App.5th 1058, 1081, review granted Sept. 24, 2025, S292540 [concluding the defendant failed to show that section 1170(d)(1)'s limitation on eligibility to juvenile defendants sentenced to LWOP "has no rational basis, and is therefore unconstitutional, as applied to juvenile homicide offenders who were sentenced to serve 50 years to life"], and *People v. Isayev* (2025) 113 Cal.App.5th 1117, 1127, review granted Nov. 12, 2025, S292860 [disagreeing with *Heard*, *Sorto*, and *Bagsby* and concluding that because defendant is eligible for a youth offender parole hearing at age 42, his 50-years-to-life sentence "is not the functional equivalent of LWOP"] with *People v. Cabrera* (2025) 111 Cal.App.5th 650, 653 (*Cabrera*) [agreeing with *Heard* and concluding that a 50-years-to-life sentence for a juvenile homicide offender is the functional equivalent of LWOP]; see also *People v. Franklin* (2016) 63 Cal.4th 261, 280 [holding that because section 3051 entitles the defendant to a youth offender parole hearing during his 25th year of incarceration, defendant's 50-years-to-life sentence "is neither LWOP nor its functional equivalent" and thus does not give rise to an Eighth Amendment claim under *Miller*].)

Moreover, three Courts of Appeal that have addressed cases involving sentences shorter than 50-years-to-life have concluded that those juvenile defendants were not eligible for relief under section 1170(d)(1). (See *People v. Olmos* (2025) 109 Cal.App.5th 580, 583 (*Olmos*) [accepting *Heard* arguendo and holding that a 33-years-to-life sentence for a juvenile homicide defendant is not the functional equivalent of LWOP]; *People v. Baldwin* (2025) 113 Cal.App.5th 978, 985 (*Baldwin*) [agreeing with *Thompson*'s equal protection-based functional equivalency formulation and concluding that the defendant "failed to demonstrate—as is his burden—that section 1170(d)'s limitation on eligibility to those sentenced to LWOP has no rational basis, and is therefore

9

unconstitutional under the Fourteenth Amendment, as applied to juvenile nonhomicide offenders sentenced to 44 years to life"]; *People v. Ortega* (2025) 111 Cal.App.5th 1252, 1262–1265, review granted Sept. 17, 2025, S292070 (*Ortega*) [disagreeing with *Heard* (deeming it inconsistent with *Franklin*)]; *id.* at p. 1265 [and concluding the homicide defendant's equal protection claim regarding his 42-years-to-life sentence "is moot because under clear and binding precedent he was not sentenced to a prison term that currently violates the constitution (i.e., a sentence that is the functional equivalent of life in prison without the possibility of parole)" (italics & underscoring omitted)].)

B. *Standard of Review*

"The proper interpretation of a statute is a question of law subject to de novo review. [Citation.] When the trial court applies its factual findings under a statute, we review the factual findings for substantial evidence; but the interpretation and application of the statute to those factual findings is a question of law subject to de novo review." (*People v. Harring* (2021) 69 Cal.App.5th 483, 495; see also *Ortega*, *supra*, 111 Cal.App.5th at p. 1257, review granted [issues of statutory interpretation and constitutionality are reviewed de novo]; *Heard*, *supra*, 83 Cal.App.5th at pp. 622–623.)

C. *Analysis*

The Attorney General does not argue that *Heard* and the cases following it were wrongly decided (although amici make such an assertion). Rather, the parties dispute whether Mai's 40-years-to-life sentence is the functional equivalent of LWOP for the purposes of Mai's equal protection-based claim. Given the position of the parties, we will assume arguendo that juvenile defendants who were sentenced to the functional equivalent of an LWOP sentence are entitled to submit a petition for recall and resentencing

10

under section 1170(d)(1)(A). Using this assumption as a starting point, we must then decide whether Mai's 40-years-to-life sentence for murder, two counts of attempted murder, and assault with a deadly weapon is functionally equivalent to LWOP.

The *Sorto* court stated that "a sentence is the functional equivalent of LWOP if it includes a 'term of years with a parole eligibility date that falls outside the juvenile offender's natural life expectancy.' " (*Sorto*, *supra*, 104 Cal.App.5th at p. 443, quoting *Caballero*, *supra*, 55 Cal.4th at p. 268.) The court also stated that "a functionally equivalent LWOP sentence provides no meaningful possibility of parole and effectively condemns the offender to die in prison." (*Sorto*, at p. 451; see also *Contreras*, *supra*, 4 Cal.5th at p. 372 [rejecting proposed rule that "a sentence provides a meaningful opportunity for release if it allows for parole eligibility within a defendant's life expectancy"]; *id*. at p. 373 [and holding appropriate metric is "whether the parole eligibility date of a lengthy sentence offers a juvenile offender a realistic hope of release and a genuine opportunity to reintegrate into society"].)

Pending further guidance from our high court in *Munoz*, we are not persuaded that Mai's 40-years-to-life sentence is the functional equivalent of a LWOP sentence. Mai cites no published case reaching this conclusion, and Mai's sentence is shorter than the sentences that were at issue in *Heard*, *supra*, 83 Cal.App.5th at page 614 (23 years plus 80 years to life), *Sorto*, *supra*, 104 Cal.App.5th at page 440 (10 years plus 130 years to life), *Bagsby*, *supra*, 106 Cal.App.5th at page 1047 (67 years plus 40 years to life), and *Cabrera*, *supra*, 111 Cal.App.5th at page 652 (50 years to life).

Regardless of any eligibility for parole under the youth offender parole scheme (§ 3051) and the elderly parole program (§ 3055) or deductions based

11

on conduct credits, Mai will have the opportunity for release on parole at age 57. Should Mai be granted parole at that age, he will have the opportunity to rejoin society for a sufficient period to achieve reintegration as a productive and respected member of the citizenry. The possibility of release at 57 also provides Mai an incentive to rehabilitate in custody and takes into account culpability-related concerns applicable to juvenile homicide offenders. (See generally *People v. Hardin* (2024) 15 Cal.5th 834, 855–856 [discussing penological considerations applicable to juvenile homicide offenders].)

We conclude that Mai has not shown error in the trial court's conclusion that he failed to meet his burden to show his 40-years-to-life sentence is functionally equivalent to LWOP. As Mai has not established that his sentence is functionally equivalent to LWOP, he is not eligible for relief under section 1170(d)(1) through application of equal protection principles, as construed by *Heard, supra*, 83 Cal.App.5th at page 612.[9] (See *Olmos, supra*, 109 Cal.App.5th at p. 583; *Baldwin, supra*, 113 Cal.App.5th at p. 1006; *Ortega, supra*, 111 Cal.App.5th at p. 1262, review granted.)

### III. DISPOSITION

The March 5, 2024 order denying Mai's petition under Penal Code section 1170, subdivision (d)(1) is affirmed.

---

[9] Given this conclusion, we need not consider amici's various contentions for affirming the trial court's order on other grounds.

_____
Danner, Acting P. J.

WE CONCUR:


_____
Lie, J.


_____
Bromberg, J.


**H051930**
***People v. Mai***